WILLIAM WENTE, Appellee, *vs.* THE COMMONWEALTH FUEL COMPANY, Appellant.

*Opinion filed February 20, 1908.*

1. APPEALS AND ERRORS—*brief and argument should be directed to the judgment to be reviewed.* Upon appeal to the Supreme Court from a judgment of the Appellate Court the brief and argument should be directed to the judgment of the Appellate Court to be reviewed and not to the judgment or decree of the trial court.

2. EVIDENCE—*what evidence is properly excluded.* In a proceeding to enjoin the improper use of a coal-hopper upon premises adjoining those of the complainant, where the controverted question of fact is whether such use causes complainant's building to be filled with fine coal dust, if a witness for the defendant testifies that he has been in complainant's house and found it clean and free from coal dust, the court may refuse to allow him to state that his own house, on the other side of the coal yard, was not affected.

3. INJUNCTION—*when court cannot compare benefit to the complainant with injury to defendant.* If the existence of a private right in the complainant and a violation thereof by the defendant are clearly established and the damages cannot be adequately compensated for in an action at law, the court should grant an injunction without considering whether the expense thereby entailed upon the defendant will greatly exceed the damage to complainant were relief denied. (*Lloyd* v. *Catlin Coal Co.* 210 Ill. 460, explained.)

4. SAME—*when existence of nuisance need not be first determined at law.* Where the legal right of the complainant in a bill for injunction is clearly established and an unreasonable and unlawful use by the defendant of its own property to the injury of

the complainant's right is also clearly proven, relief may be granted without prior determination in a suit at law that the defendant's use of its property constitutes a nuisance.

5. SAME—*when the particular manner of conducting a business may be enjoined.* If a necessary business, which is not a nuisance *per se,* is conducted in such a manner as to materially interfere with the ordinary comforts of physical existence in adjoining premises and the damages cannot be adequately compensated for in an action at law, a court of equity will enjoin the conduct of the business in such offensive manner.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

EDWARD D. POMEROY, for appellant.

MICHAEL D. DOLAN, and FREEMAN K. BLAKE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William Wente, appellee, filed his bill in the superior court of Cook county praying for an injunction restraining Commonwealth Fuel Company, appellant, from piling its coal against the west wall of the complainant's building and from operating its coal hopper in the manner in which it had previously been operated. The grounds upon which the complainant asked for an injunction were, that the piling of the coal against his building was a continuing trespass, and that the operation of the coal hopper as it had been operated caused smoke, dust and cinders to permeate the air and fill his house, living apartments and barber shop, destroying the furniture and contents of the house and rendering it impossible to use and enjoy the same or to conduct his business the same as he had done before the erection of the hopper. The defendant, by its answer, denied that

it had committed the trespass alleged by piling coal against the complainant's building, or that the operation of the coal hopper and machinery produced any of the deleterious effects alleged in the bill. The witnesses for the respective parties were produced and examined in open court, and from their testimony the court found the averments of the bill to be true, and entered a decree enjoining the defendant from storing and piling its coal against the west wall of complainant's house and from storing or piling any coal against his fence, and from operating its plant, machinery, elevators and hopper on the lot adjacent to complainant's house, and from causing any dust, cinders or particles of coal to be deposited in complainant's house, barber shop and tenements. From that decree the defendant appealed to the Appellate Court for the First District, and the case is brought to this court by a further appeal for the purpose of reviewing the judgment of the Appellate Court.

Although the judgment to be reviewed is that of the Appellate Court and error must be assigned on that judgment, the brief for appellant, disregarding the rule of this court, contains no statement as to what that judgment was or what disposition was made of the case by that court. The brief and argument are directed wholly against the decree of the superior court and consist of an attack upon that decree, and the argument concludes by saying that the decree of the superior court ought to be reversed, as though that decree was still in force. The abstract, however, shows that the Branch Appellate Court reversed the decree of the superior court and remanded the cause to that court, with directions to enter a decree that the defendant be enjoined and restrained from piling coal against the west wall of the complainant's building or against his fence, and from operating said elevating plant in its present condition or in such manner as to cause a sufficient amount of small particles of coal or coal dust to be carried from said plant to the building and premises of complainant to substantially

and materially interfere with the ordinary comfort of physical existence in said building and premises, and that each party pay half the costs. The brief and argument, which are undoubtedly the same that were filed in the Appellate Court, assail the decree with equal vigor respecting provisions which were corrected by the Appellate Court, such as the decree being broader than the prayer of the bill, and enjoining the operation of the plant and causing any dust, cinders or particles of coal whatever to be deposited on the complainant's premises, and those respects in which the Appellate Court directed a decree. The brief and argument lose much of their force from lack of application to the judgment under review and illustrate the propriety and necessity of complying with the rules of this court. There would be no cause for complaint if we should affirm the judgment of the Appellate Court without giving it further consideration, but we have looked into the case as fully as though the brief and argument were proper.

The facts appearing at the hearing are as follows: About thirteen years before the bill was filed, the complainant, who is a barber, erected a two-and-one-half story brick building, sixty feet long and twenty-two feet wide, on his lot facing south on Belmont avenue and numbered 1114. The building stands six inches east of the west line of the lot, and the front room of the first story was fitted up and has been used as a barber shop and the four rooms in the rear have been occupied as complainant's dwelling. The rooms above the first floor have been rented to tenants. The lot runs back one hundred and twenty-four feet from Belmont avenue to an alley sixteen feet wide. When the building was erected there was a small coal yard on the lot west of it. In June, 1902, the defendant leased the premises west of complainant's lot and extending north to Melrose street,—the street next north of Belmont avenue,— including the premises north of the alley. In 1903 it put up a building sixty feet high about sixty-three feet from

the rear of the complainant's house and in it constructed the hopper complained of. The Chicago and Milwaukee railroad runs in a north-easterly direction a few feet west of defendant's premises at the north-west corner and about seventy-five feet from complainant's lot. A switch track runs from the railroad into defendant's yard for the purpose of unloading. The part of the coal yard west of the complainant's lot is used for storing soft coal and that part north of the alley for storing and handling hard coal. The soft coal is loaded in wagons by hand but the hard coal is handled through the hopper. When cars are switched into the yard, an automatic shovel, holding in the neighborhood of five thousand pounds, takes the coal off the car and deposits it in a pit, and from the pit a conveyor carries the coal up and dumps it into the hopper. The total capacity of the hopper is six hundred and fifty to seven hundred tons of coal, and it is divided into eight bins, with eight spouts for loading coal from the bins into the wagons of customers. Before the bill was filed the complainant had a fence on a line with the west wall of his building, extending from the north-west corner of the building to the alley, and the defendant had a fence alongside and a few inches west of the complainant's fence. The defendant piled large quantities of soft coal against its own fence, which pushed down the fence and also the fence of complainant, allowing the coal to run on complainant's lot. Defendant also piled soft coal to a height of twelve feet or more against the west wall of the complainant's building, except at the windows, which pushed the wall slightly out of line and the coal was six inches on complainant's lot. The coal was removed three days after the bill was filed and defendant put up a fence on its line.

The controverted question of fact was whether the hopper caused coal dust and dirt to be deposited on complainant's premises, permeating his building, causing damage and physical discomfort. The evidence for complainant on

that subject was, that when the hopper was in operation it filled the house with small, fine black coal dust, which gathered on everything in the barber shop, living apartments and tenements; that the barber shop and the glass cases were filled and covered with coal dust and could not be kept clean, and tenants would not remain on account of such coal dust, and that wherever one walked about the premises, or on the porch, the foot-prints could be seen in the coal dust. Tenants testified that it was impossible to have a home there, and one said that he would not have stayed a month if it had not been for circumstances that compelled him to do so. The evidence for the defendant was that there was practically no dust on the premises, and that such dust as there was came from manufacturing concerns, of which there were a number in the neighborhood and which emitted from their chimneys dense black smoke. We are satisfied that the conclusion of fact by the superior court was correct. Undoubtedly there was smoke in the atmosphere, but coal dust is clearly distinguishable both from smoke and from the soot which is deposited to some extent from it. There is nothing to cast doubt upon the credibility of complainant's witnesses, and it is quite clear that they did not mistake smoke and soot for the fine, black coal dust which came from the hopper, in which their tracks were plainly visible.

It is contended that the court erred in ruling on the admission of testimony, and the first ruling complained of was made when the defendant had Henry Pottgether, the owner of the premises where the coal yard was, on the stand as a witness. He lived west of the coal yard, and was asked what the conditions were with reference to dust and dirt in his house. The court sustained an objection and the defendant excepted. The witness testified that he had been in the complainant's house; that he did not notice any coal dust and dirt in or about the place; that the complainant and his wife had invited him at different times into

their house and he had been in the barber shop and the living rooms, and that they were clean and there was no coal dust. The inquiry was about the conditions in the complainant's house, and if evidence as to the conditions in the neighborhood would have had any bearing on that question, this witness gave direct evidence of the condition of the complainant's house, and it was not error to exclude evidence that the witness' house also was not affected. Evidence only remotely bearing on the issue would have added nothing to the weight of the witness' testimony.

The other point made is, that the court erred is not permitting the president and general manager of the defendant to state the expense of constructing the hopper. It is insisted that the evidence was competent to show that great injury would result to the defendant by an injunction in proportion to the damage caused to the complainant by the operation of the hopper. If the existence of a private right and the violation of it are clear, it is no defense to show that a party has been to great expense in preparing to violate the right. The law does not undertake to estimate the difference between the loss that would be sustained by the party owning the thing complained of and the damage to the injured party, nor to grant or withhold relief on such a basis. (21 Am. & Eng. Ency. of Law,—2d ed.— 690.) Counsel claims that there is such a rule, and for the purpose of sustaining his claim takes from the decision in *Cleveland* v. *Martin,* 218 Ill. 73, the language there quoted from *Lloyd* v. *Catlin Coal Co.* 210 Ill. 460, and says it establishes the rule that a court, in the exercise of sound discretion, should refuse an injunction where the defendant's damages and injuries will be greater by granting the writ than the complainant's benefit from granting it or greater than the complainant's damages by the refusing of it. The result which counsel seeks for is only accomplished by separating the statement from its context and from the facts of each case. In the first case the opinion stated that it

(

was uncertain what per cent of the coal could be removed; that it depended upon local conditions as the work progressed; that serious injustice might be done by the court fixing the amount of coal to be left, and that in such a case the rule stated was to be applied. In the second case, where the language was quoted, it was said that the complainant's right to an injunction was not clear but involved in doubt; that the injury alleged to be a consequence of a breach of the contract was remote, problematic and speculative, and, in fact, not at all probable. In such a case it was clearly the duty of the court to consider the consequences of an injunction. In neither case was there any intimation that any such rule of law could be applied where the right is specific and clear, the wrong undoubted and the consequence reasonably certain.

The conditions under which a court of equity will intervene by injunction to prevent a nuisance are well settled, and the rules were clearly and fully stated by Mr. Justice Scholfield in the case of *Wahle* v. *Reinbach,* 76 Ill. 322. A repetition of them here would not be profitable and is not necessary. The business of the defendant is a necessary one and it is not a nuisance *per se,* but if a business is offensive to such a degree as to materially interfere with ordinary physical comfort, measured, not by the standard of persons of delicate sensibilities and fastidious habits, but by the habits and feelings of ordinary people, and the damages are of a nature which cannot be adequately compensated for in an action at law, a court of equity will grant an injunction. In such a case the court will not balance public benefits or public inconvenience against the individual right. (*Seacord* v. *People,* 121 Ill. 623.) The question whether the operation of the hopper was a nuisance might have been determined in an action at law, as was done in the case of *Wylie* v. *Elwood,* 134 Ill. 281, and that should be done in any case where the legal right and the injury are not clearly established. (*Nelson* v. *Milligan,* 151 Ill. 462.) But where

the legal right of a complainant is clearly established and the unreasonable and unlawful use by the defendant of its property to the injury of the complainant is also clearly proved, it is not necessary that the question should first be determined in a suit at law. We agree with the conclusion of the Appellate Court. The decree as directed by that court only restrained the defendant from operating its plant as it has been operated, or in such manner as to substantially and materially interfere with the ordinary comfort of physical existence in the building and premises of complainant.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*