EDWARD OEHLER *et al.* Appellees, *vs.* CHARLES LEVY,
Appellant.

*Opinion filed June 18, 1908.*

1. NUISANCE—*party may be entitled to an injunction although
question of nuisance has not been settled at law.* In a bill to enjoin
a certain use of property, if the legal right of the complainant and
the unreasonable and unlawful use by the defendant of his property
to the injury of the complainant are clearly established, a court of
equity may grant an injunction without a prior determination of the
question of nuisance in a court of law.

2. SAME—*improper use of stable may be enjoined.* The keep-
ing of horses in a stable adjoining complainant's flat-building, in
such numbers as to habitually disturb the sleep and comfort of the
complainant and his tenants because of the noise made by the
horses and the loud and obscene talking of the attendants, and the
allowing of the premises to become so filthy as to produce odors
and gases deleterious to the health and comfort of the complainant
and his tenants, may be enjoined.

3. SAME—*fact that premises were used as a stable before com-
plainant bought his property does not preclude injunction.* The
fact that defendant's premises were used as a stable before the com-
plainant bought the adjoining property does not preclude an in-
junction restraining the use as a nuisance, provided the stable is, in
fact, being so offensively conducted as to constitute a nuisance.

4. INJUNCTION—*when the defendant will not be enjoined from
maintaining driveway which obstructs sidewalk.* In enjoining, at
the suit of a private person, the offensive use of defendant's stable,
it is not error to decline to enjoin the defendant from maintaining
a driveway to the stable which partially obstructs the sidewalk,
where the bill does not specifically pray for such relief and where
it is not averred nor proved that the complainant suffers a special
damage by reason of such obstruction.

5. SAME—*proper use of stable in residence district will not be
enjoined.* The keeping of a stable for horses in the residence dis-
trict of a large city will not be enjoined provided the stable is kept
in such a manner that it does not constitute a nuisance.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. WILLARD M. McEWEN,
Judge, presiding.

This was a bill in chancery filed in the superior court of Cook county by the complainants, Oehler and Reichhold, against the defendant, Charles Levy, to restrain Levy from maintaining a nuisance upon certain premises situated in the city of Chicago which belonged to him and which adjoined property owned by the complainants.

It appears from the pleadings and proofs that the complainants are the owners of a flat-building containing ten flats, fronting upon South Lincoln street, in the city of Chicago, which flats, with the exception of one which is occupied by Oehler as a residence, are occupied as residences by tenants of the complainants; that the defendant is the owner of two lots immediately north of and adjoining the complainants' flat-building, fronting upon the same street; that defendant's south lot is improved with a basement and one-story brick building, in which the defendant keeps the horses, about twenty in number, used by him in delivering newspapers for several of the companies publishing daily newspapers in the city of Chicago; that the defendant has in his employ ten or twelve men engaged in delivering said newspapers; that the floor of the building above the basement is about five feet above the street level, which floor is reached by a driveway five feet wide, commencing at the street and extending to said floor at the front of the building; that the horses are kept in the building above the basement and the wagons in a building upon the adjoining lot; that the horses are harnessed in the building where kept and led or driven down said driveway to the street, where they are hitched to the wagons, which are run out upon the street for that purpose; that the defendant has suffered the building where said horses are kept to become filthy and manure and urine to accumulate in and about said building in large quantities, from which noxious and offensive odors are given off, which enter said flat-building and contaminate the air therein; that the horses, during all hours of the night, in passing to and from the building where they

are kept and while standing in their stalls, and by walking, pawing and kicking, make a great deal of noise; that the men in charge of the horses, while handling the same, use loud, profane and obscene language; that said driveway obstructs the free passage of pedestrians upon the street in front of the defendant's building, and that the offensive odors given off from the accumulated manure and urine in and about said building, the continued tramping, pawing and kicking of the horses kept in the building, and the loud talking, profanity and obscenity of the employees of the defendant, render the flat-building of the complainants un-healthy and undesirable as a place in which to live and thereby the rental value thereof has been greatly reduced.

The trial court held that the complainants were not en-titled to an injunction restraining the defendant from keep-ing horses upon the said premises, on the ground that the building of the defendant had been erected and used as a place for stabling horses prior to the time of the erection of complainants' flat-building, but held complainants were entitled to have, and so decreed, the stable upon said prem-ises kept in a sanitary condition, and to have the use of profane and obscene language by defendant's employees, while upon the said premises, discontinued. The complain-ants prosecuted an appeal to the Appellate Court for the First District, and the defendant assigned cross-errors. That court reversed the decree of the superior court upon the ground that the decree was so indefinite that it could not be enforced, and remanded the cause to that court with directions to enter a decree perpetually enjoining the de-fendant from maintaining, or permitting to be maintained, on the property of the defendant, a stable for horses in such numbers or in such manner as to produce noise suffi-cient habitually to disturb the sleep or comfort of the dwell-ers in the building owned by the complainants, or so as to produce odors or gases deleterious to the health or comfort of the dwellers in said building, or to so conduct business

on said premises as to cause, by the noise and loud talking incident thereto, habitual disturbance to the health, sleep or comfort of said dwellers. From that judgment of the Appellate Court Charles Levy has prosecuted an appeal to this court, and errors and cross-errors have been assigned upon the record by the respective parties to this appeal.

ZACH HOFHEIMER, for appellant:

To be a nuisance, appellant's place must materially lessen the value of appellees' property, must be deleterious to the health and must be unreasonably obnoxious. Bispham's Eq. secs. 438, 439; 21 Am. & Eng. Ency. of Law, (2d ed.) 684, 692; *Chicago* v. *Stratton,* 162 Ill. 501; *Powder Co.* v. *Tearney,* 131 id. 326; *Gallagher* v. *Flurry,* 99 Md. 188; *St. Louis* v. *Russell,* 116 Mo. 494.

The nuisance must first be found to exist by a jury. Equity will not interfere unless the nuisance, and the resulting injury, are clearly shown by the evidence. 1 High on Injunctions, (3d ed.) secs. 740-752, 785; 2 Beach on Injunctions, secs. 104, 1064; *Oswald* v. *Wolf,* 129 Ill. 200; *Dwight* v. *Hayes,* 150 id. 273; *Robb* v. *LaGrange,* 158 id. 21; *Melting Co.* v. *Park Co.* 99 Ill. App. 215; *Flood* v. *Consumers' Co.* 105 id. 559; *Huckenstine's Appeal,* 70 Pa. St. 102; *Gilbert* v. *Showerman,* 23 Mich. 440; *Powell* v. *Bentley,* 12 L. R. A. 53.

Appellant's place was in operation when appellees purchased their property. *Railroad Co.* v. *Loeb,* 118 Ill. 215.

SAMUEL B. KING, and JULE F. BROWER, for appellees:

The stamping of horses' feet in a stable in which horses are kept is considered as much an element of nuisance which will be enjoined as are odors arising from stables. *Broder* v. *Saillard,* L. R. 2 Ch. D. 692; *Railroad Co.* v. *Darke,* 148 Ill. 232; *Aldrich* v. *Howard,* 8 R. I. 246; *Rodenhausen* v. *Craven,* 141 Pa. St. 546; *Shiras* v. *Olinger,* 50 Iowa, 571; *Burdett* v. *Swenson,* 17 Tex. 489; *Coker* v. *Birge,* 10 Ga.

336; *Dargan* v. *Waddell,* 9 Ired. 244; *Drysdale* v. *Dugas,* 26 Can. 20; *Filson* v. *Crawford,* 5 N. Y. Supp. 882; *Johnson* v. *Smith,* 7 id. 38; *Packard* v. *Collins,* 23 Barb. 445.

Noise in a residence district which will disturb the sleep of the inhabitants in an adjoining building is a nuisance which may be enjoined. *Railroad Co.* v. *Darke,* 148 Ill. 226; *Railroad Co.* v. *Nix,* 137 id. 141; *Wente* v. *Fuel Co.* 232 id. 526.

There is a distinction in the nature of the remedy for nuisance, depending upon the question whether the noise creates personal discomfort only, or whether it also causes injury to value of property. In the first place the nuisance is not always enjoined, while in the second place an injunction is always granted. Bispham's Eq. (6th ed.) sec. 439; 2 Story's Eq. Jur. sec. 926.

Where the facts by which the existence of a nuisance is established are clearly proved, relief will be granted by injunction although a remedy at law has not been sought. *Wente* v. *Fuel Co.* 232 Ill. 526; *Dwight* v. *Hayes,* 150 id. 273.

Every continuance of a nuisance is held to be a fresh one, and therefore a fresh action will lie. 3 Blackstone's Com. 220; *Brown* v. *Railroad Co.* 12 N. Y. 486; *Beckwith* v. *Griswold,* 29 Barb. 291.

Even though the damage is small, yet if the injury is of a continuous nature, so as to operate as a constantly recurring grievance, the court will restrain it to avoid a multiplicity of suits. 1 Wood on Nuisance, (3d ed.) 744.

The fact that the building purchased by appellees was built after the building purchased by appellant will not bar appellees' right to enjoin the nuisance, because the rule is, that as population surrounds a thing which is not a nuisance *per se* but becomes a nuisance only because of the fact population moves to it, the business which thus becomes a nuisance must vacate. *Powder Co.* v. *Tearney,* 131 Ill. 322; *Campbell* v. *Seaman,* 63 N. Y. 558; Bispham's Eq. (7th ed.)

sec. 442; *Clancy* v. *Flusky,* 52 L. R. A. 279; *Tipping* v. *Smelting Co.* L. R. 1 Ch. App. 66; *Drysdale* v. *Dugas,* 26 Can. 20; *Filson* v. *Crawford,* 5 N. Y. Supp. 882; *Brady* v. *Weeks,* 3 Barb. 157; *Taylor* v. *People,* 6 Parker's Cr. 353.

The ridge in the sidewalk, consisting of an inclined roadway, is a purpresture. *Cold Storage Co.* v. *McDowell,* 224 Ill. 287; *Smith* v. *McDowell,* 148 id. 51; *Field* v. *Barling,* 149 id. 556.

Because the purpresture occurs in the route traveled by appellees and their tenants to reach appellees' building, and is an inconvenience to such travel, the damage therefrom is special to appellees, so as to entitle them to maintain a bill to enjoin the same. *Nelson* v. *Randolph,* 222 Ill. 531; *Field* v. *Barling,* 149 id. 556.

Mr. JUSTICE HAND delivered the opinion of the court:

The first contention made by the appellant is, that the Appellate Court erred in holding that he was guilty of maintaining a nuisance upon his premises. The evidence clearly shows that appellant was the owner of and in possession of the premises adjoining the flat-building of appellees; that he kept upon his premises about twenty head of horses; that he failed to remove the manure and urine deposited by said horses upon said premises at such times and in such a manner as to prevent offensive odors from arising therefrom, which penetrated the several flats in the building of complainants and contaminated the air therein and caused disease and sickness among the occupants of said building, and that the horses kept in said building, and the men who cared for and drove them, when in and about said building, made a great deal of noise in the night time, which prevented the occupants of said flat-building from sleeping, and that the rental value of said premises, by reason of the misconduct of the defendant in the particulars hereinbefore pointed out, was greatly reduced.

In *Wahle* v. *Reinbach*, 76 Ill. 322, on page 327, it was said: "Whatever is offensive, physically, to the senses, and by such offensiveness makes life uncomfortable, is a nuisance." And in *Wente* v. *Commonwealth Fuel Co.* 232 Ill. 526, on, page 533: "If a business is offensive to such a degree as to materially interfere with ordinary physical comfort, measured, not by the standard of persons of delicate sensibilities and fastidious habits, but by the habits and feelings of ordinary people, and the damages are of a nature which cannot be adequately compensated for in an action at law, a court of equity will grant an injunction." And in *Chicago, Milwaukee and St. Paul Railway Co.* v. *Darke,* 148 Ill. 226, on page 232: "It cannot be doubted that at common law mere noise in the immediate vicinity of the premises, and especially of the dwelling house of a land owner, may be of such character as to constitute an actionable nuisance, remediable by an action on the case for damages or by injunction." And in High on Injunctions (3d ed. sec. 780): "The use of a building adjoining plaintiff's, in a large city, as a stable and the keeping of horses therein, causing annoyance and loss to plaintiff in his business as a lodging-house keeper, constitute such a nuisance as will be enjoined. So the keeping of horses in a stable adjoining plaintiff's premises, and the noise resulting therefrom, with the fact of moisture and dampness passing through from defendant's stable to plaintiff's wall, afford sufficient ground for relief by injunction." And it has been held that damages resulting from sickness, and discomfort caused by inhaling unwholesome vapors and enduring the foul stenches originating from conditions similar to those created by defendant, are of such a character as not to be adequately compensated for in an action at law and afford the basis of equitable relief by way of injunction. *Wahle* v. *Reinbach, supra.*

We think it clear, in view of the evidence found in this record, and the law as announced in the text books and ad-

judicated cases, that the Appellate Court properly held appellant guilty of maintaining a nuisance upon his premises.

It is next contended by the appellant that the Appellate Court erred in holding that appellees were entitled to an injunction, as the appellant had not been held to be guilty of maintaining a nuisance in an action at law. It has been repeatedly held by this court that where the legal right of a complainant in a bill for an injunction is clearly shown and the unlawful use of the defendant's property which injured the complainant's property is clearly settled, the complainant will be granted relief without a prior determination in a suit at law that the defendant's use of his property constitutes a nuisance. (*Wahle* v. *Reinbach, supra; Wente* v. *Commonwealth Fuel Co. supra.*) In the *Wente case,* on page 533, it was said: "Where the legal right of a complainant is clearly established and the unreasonable and unlawful use by the defendant of its property to the injury of the complainant is also clearly proved, it is not necessary that the question should first be determined in a suit at law." And in the *Wahle case,* which was a bill to enjoin the defendant from constructing a privy within a few feet of the complainant's dwelling house and well, the court, on page 327, said: "Manifestly, no remedy in an action at law would be adequate in a case like the present. Upon what basis could the damages be estimated for the sickness or discomfort caused by inhaling the unwholesome vapors, drinking the impure water and enduring the foul stenches originating from a structure of the description and relative location complained of? And to say that such a nuisance must be suffered to be created and continued until its character shall be formally determined at law would seem to be but little better than a mockery of justice to him whose residence is affected by it." The facts alleged in complainants' bill in this case were practically undisputed, and, as was said in the *Wahle case,* to require complainants and their tenants to inhale the unwholesome vapors, endure the

foul stenches arising from the offensive matter allowed to
accumulate in and about said stable, and deprive them of
their rest at night by reason of the noise of twenty head
of horses quartered within a few feet of their sleeping
apartments and the profane and obscene language of ap-
pellee's employees uttered immediately beneath their win-
dows, until the character of the place maintained by the
appellant was formally determined in an action at law,
would, indeed, be a "mockery of justice" to the complain-
ants and their tenants. The Appellate Court committed no
error in holding that it was not necessary that the com-
plainants should have established that appellant was main-
taining a nuisance upon his premises in an action at law
before they could maintain a bill to enjoin the further main-
tenance of the nuisance shown by the evidence in this case
to exist upon said premises.

It is finally contended by the appellant that the Appel-
late Court erred in holding the appellees could maintain
their bill, as it appeared appellant's property was used as
a place where horses were stabled before the flat-building
of the appellees was constructed. The evidence shows that
after the appellant purchased his property, and while appel-
lees were the owners and in possession of their flat-building,
he made several changes in the use of his building which
made its use more offensive to persons occupying complain-
ants' adjoining property than it had been before it came
into his possession. In the month of April preceding the
filing of the bill he removed the horses from the basement
to the room above the basement, and instead of placing the
manure upon a wagon and hauling it away he stored it upon
the premises. The stabling of the horses above the base-
ment greatly increased the noise made by them, and the
storing of the manure upon the premises instead of haul-
ing it away increased the offensive odor and stench which
escaped therefrom and penetrated appellees' building, and
the urine that fell upon the floor upon which the horses

stood leaked through into the basement and penetrated the walls of appellees' building and contaminated the basement of their building. If, however, it were conceded that no changes had been made by appellant in the use of his building while he was in possession thereof or after the erection of appellees' building, still the Appellate Court, we think, did not err in holding that an injunction should issue against appellant. The properties of the parties to this litigation are located in a portion of the city largely devoted to residence purposes, and the law seems to be well settled that the· fact that a party may be established in business in a particular portion of a growing city does not protect him from a bill for an injunction for maintaining a nuisance, if he actually maintains such nuisance, at the suit of a party who subsequently enters the same territory. In Bispham's Equity (7th ed. sec. 442) it is said: "It was formerly thought that if a man erected a dwelling house in the immediate neighborhood of a factory where an offensive or noisy or dangerous trade. was carried on he was not entitled to his injunction because it was his own fault to move to the proximity of the objectionable trade. But this doctrine of coming to a nuisance (as it was termed) is now exploded, and the most recent authorities hold that the injunction will not be refused on that ground." And in *Campbell* v. *Seaman,* 63 N. Y. 568, on page 584, it is said: "One cannot erect a nuisance upon his land adjoining vacant lands owned by another and thus measurably control the uses to which his neighbor's land may in the future be subjected. He may make a reasonable and lawful use of his land and thus cause his neighbor some inconvenience, and probably some damage which the law would regard as *damnum absque injuria;* but he cannot place upon his land anything which the law would pronounce a nuisance, and thus compel his neighbor to leave his land vacant or to use it in such way, only, as the neighboring nuisance will allow." And in *Laflin & Rand Powder Co.* v. *Tearney,*

131 Ill. 322, the court quoted with approval the following from *Weir's Appeal,* 74 Pa. St. 230: "Carrying on an offensive trade for any number of years in a place remote from buildings and public roads does not entitle the owner to continue it in the same place after houses have been built and roads laid out in the neighborhood, to the occupants of which and travelers upon which it is a nuisance. As the city extends, such nuisances should be removed to the vacant grounds beyond the immediate neighborhood of the residence of the citizens. This public policy, as well as the health and comfort of the population of the city, demands."

It is assigned as cross-error that the Appellate Court erred in declining to direct the superior court to enter a decree requiring the appellant to remove the driveway from across the sidewalk in front of his premises, which connected his stable with the street. The appellees did not specifically pray for such relief, and it is not averred in the bill or shown by the proof that the appellees are specially damaged by reason of the construction of said driveway. It has often been decided to be the law of this State, that for an obstruction to streets not resulting in special injury to the individual the public only can complain. *McDonald* v. *English,* 85 Ill. 232; *City of Chicago* v. *Union Building Ass.* 102 id. 379; *Barrows* v. *City of Sycamore,* 150 id. 588; *Guttery* v. *Glenn,* 201 id. 275; *Hamilton* v. *Semet Solvay Co.* 227 id. 501.

It is also assigned as cross-error that the Appellate Court erred in not directing the superior court to enter a decree enjoining the appellant from keeping any horses in his building or upon the premises adjoining the property of the appellees. The nuisance created by the appellant consisted in the manner of the use of his premises, and while the direction to the superior court by the Appellate Court, when incorporated in the decree of that court, practically will prohibit the appellant from maintaining his stable upon

the said property, theoretically it does not. The Appellate Court was not, as it states in its opinion, prepared to hold, as a matter of law,—and neither is this court,—that a stable may not be kept in a residence district of a large city in such manner that it would not be regarded as a nuisance, and for that reason it refused to direct the superior court to enter a decree enjoining the appellant from keeping any horses in his building or upon his premises. In this we think there was no error.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*