## Allen U. Huff and Mary E. Huff, Appellees, v. Clinton T. Coats and Mid-West Forge and Steel Company, Appellants.

1. NUISANCE—*sufficiency of evidence as to whether plant was located in residence or industrial section.* Evidence reviewed in a bill to enjoin the use of defendants' manufacturing plant and machinery and drop hammers so as to injure complainants' premises, on the question as to whether or not such plant was located in a residence or industrial section, and the chancellor's finding in favor of complainants not disturbed.

2. NUISANCE—*effect of building home near manufacturing plant.* Under the Illinois authorities the fact that· complainants, in a bill to enjoin the operation of defendants' manufacturing plant, built their. home in the vicinity of defendants' plant after it was in operation was not of itself a bar to the action.

3. NUISANCE—*right to show amount of investment in plant constituting a nuisance.* The refusal to admit evidence as to the amount of money invested in the plant and business ·of defendants, in a bill to enjoin the use of such plant in such a manner as to injure complainants' premises, was not error.

4. EQUITY—*what does not constitute laches.* In a bill to enjoin the operation of defendants' manufacturing plant, where defendants · claimed that complainants were barred by laches, proof that the plant in question was operated only a portion of the time until the fall of 1916 and that the suit was instituted in March, 1917, did not warrant the inference that the annoyance was not intolerable when the suit was brought.

5. NUISANCE—*when injunctive relief granted.* Where the case

in question for an injunction to restrain the operation of defendants' manufacturing plant so as to injure complainants' premises was so clear as to be free from substantial doubt as to the right to relief, and it was evident that a nuisance *per se* existed, equitable relief was granted without prior recourse to an action at law.

6. NUISANCE—*when manufacturing plant constitutes.* A nuisance *per se* was established in the injunction proceeding in question to restrain the use of defendants' manufacturing plant and heavy drop hammers so as to cause vibrations and jars and injure complainants and their premises.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed March 30, 1921. *Certiorari* denied by Supreme Court (making opinion final).

CURLEE & HAY, GLEN MOHLER and P. K. JOHNSON, for appellants.

McGLYNN & McGLYNN, for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellees, on March 28, 1917, filed their bill to the April term of the circuit court of St. Clair county, praying for an injunction against appellants.

The bill alleges that appellees are the owners in fee simple of the premises known as No. 742 North 22nd Street, East St. Louis, Illinois; that said property is improved by a six-room dwelling house, which had been occupied by appellees as a residence since July, 1914, and is located in a portion of East St. Louis generally devoted to residence properties; that appellant is a West Virginia corporation engaged in steel forging and the manufacture of other metal products, and is the owner of certain described premises; that on said premises appellant maintained a large factory building operating therein by steam power certain drop hammers in forging iron, steel or metal bullets or bars, which hammers are located about 450 feet from appellees' home; that said hammers are of

great weight, to wit; 1,800 and 5,500 pounds respectively, and are dropped from a great height at intervals of about one minute each upon red-hot steel, iron or metal bars with a force of about 35,000 pounds; that said hammers so operated produce great noise and vibration and disturb the walls of appellees' premises and the contents of the dwelling, and have been for more than 6 months last past operated almost continuously day and night; that said vibration, jarring and shock causes their dwelling to shake and vibrate and the plastering on the walls to crack, vibrate and become loose and likely to fall at any time, so that it is unsafe and dangerous for appellees to occupy said residence, and that they live in constant fear of being injured; that the further effects of said hammers are that the pictures on the walls of their home shake, the doors and windows rattle, vibrate and slam, the furniture, pots, pans, cooking utensils, dishes, glassware and toilet articles upon tables, dressers, stands and bureaus rattle, shake and shuffle about from their usual positions so as to require appellees to place them upon the floor at night, and to place the glass-ware in receptacles to prevent its being broken; that appellees have been unable to sleep at night, and their nervous systems have become greatly injured and their dwelling damaged and unfit for habitation, and the value thereof depreciated and almost wholly destroyed, by reason of which the operation of said drop hammers has become an intolerable nuisance to appellees and other residents in the vicinity. The bill prayed for an injunction restraining appellant from operating its plant, machinery and drop hammers in such a manner as to cause vibration and jarrings that would cause the doors and windows of appellees' residence to rattle or to cause the plastering on walls to crack and become loose, or to cause the articles in their home to rattle and shuffle so as to disturb their comfort and sleep, and for further relief. De-

murrer to this bill was overruled. Answers were filed and evidence was heard before the chancellor at the January term, 1918, and the cause taken under advisement by the court until the January term, A. D. 1920. At this term the court entered a decree enjoining appellant from operating its large drop hammer of about 5,500 pounds weight between the hours of 6 o'clock in the evening and 7 o'clock the following morning until the further order of the court. By this appeal appellants seek to reverse that decree.

Practically all the questions raised by appellants on this record relate to the sufficiency of the proofs to sustain the decree. The first question raised is that the trial court erred in finding that appellants' plant is located in a residence section and not in an industrial section. Even if this were a controlling fact in this case, which we do not consider it to be, we are of opinion that the evidence sustains the court's finding in that respect. State street runs in a general easterly and westerly direction in the City of East St. Louis, and St. Clair avenue is parallel to and one block north of State street. The north and south streets in the vicinity of appellants' plant are numbered consecutively from the west to the east and the plant is located in the block bounded by State street on the south, 21st street on the east and St. Clair avenue on the north and 20th street on the west. West of appellants' plant is the Terminal Belt Railway running north and south between 20th and 21st streets and one block west of this railway is the Southern Belt Railway also running north and south. On the same side of the plant is an old feed mill which has not been in use for some months and also a place used for marble works. A coal company had some switches just west of the plant where coal was unloaded and occasionally brick and other materials. North of appellants' plant was formerly located the plant of the Consolidated Oil Refining Company, but

at the time of this suit that plant had been removed. It is not clear whether there are any dwellings in the block on which appellants' plant is located, but it is clearly shown by the proofs that the space from 21st street east between State street and St. Clair avenue is purely a residence section. Under such proof we do not feel justified in disturbing the chancellor's finding on this question.

It is next insisted that the evidence shows the plant was first put in operation in 1911, and that appellees did not build their residence until June, 1914; that they knew when they erected their house they would be subjected to the annoyance and discomfort which must necessarily result from the operation of the plant, and that they cannot therefore now complain of such annoyance. While it does appear that the plant was first put in operation in 1911, and that appellees did not build until 1914, yet it further appears that appellees purchased the lot upon which their building stands in 1909 or 1910; that the plant was first installed by one George Heller and was operated by him, and after his death by his widow until the fall of 1916, when appellants became the owners. There is some evidence tending to prove that the plant was not operated on a full-time schedule until acquired by appellants. However this may be, we are of the opinion that under the authorities in this State the fact that appellees built in the vicinity of the appellants' plant after such plant was put in operation would not in itself be a bar to this action. In the case of *Oehler v. Levy,* 234 Ill. 595, our Supreme Court held that ''carrying on an offensive trade for any number of years in a place remote from buildings and public roads does not entitle the owner to continue it in the same place after houses have been built and roads laid out in the neighborhood, to the occupants of which and travelers upon which it is a nuisance. As the city extends, such nuisances should be removed to

the vacant grounds beyond the immediate neighborhood of the residences of the citizens. This public policy, as well as the health and comfort of the population of the city, demands.'' While the evidence does not show whether at the time the plant was first built there were any residences in this vicinity, yet, under the above authority, we are of the opinion appellees are entitled to maintain this action.

It is also urged that the trial court erred in refusing to admit testimony as to the amount of money invested in appellants' plant and business. In *Wente v. Commonwealth Fuel Co.*, 232 Ill. 526, the Supreme Court in passing upon the question of the admissibility of evidence of this nature held: ''If the existence of a private right and the violation of it are clear, it is no defense to show that a party has been to great expense in preparing to violate the right.'' It was therefore not error for the chancellor to refuse to admit this testimony. Appellants further contend that appellees were barred by laches from maintaining this suit and that the court should have so held. In support of this contention they rely on *Straus v. Barnett*, 140 Pa. St. 111, where it is said: ''The fact that the hammers as at present arranged had been in operation for 2 years prior to the filing of the bill and that no further complaint than that implied in the filing of the notice of protest set forth in the bill certainly warrants the inference that the disorder and annoyance are not intolerable.'' The proof in this case showed that the plant was operated only a portion of the time until the fall of 1916 and this suit was instituted March 28, 1917, which was not, in our opinion, sufficient to warrant the inference that the annoyance was not intolerable when the suit was brought.

It is finally contended by appellants that the court erred in granting the injunction without first having the question of nuisance *vel non* adjudicated in a court of law. It is unquestionably the general rule in

this State that where the evidence is conflicting and a doubt exists, the question of a nuisance should first be established in a trial at law before a court of equity will grant relief. This rule, however, is not so strictly enforced by our courts as formerly. "The general rule formerly strictly enforced was that a court of equity would not interfere to restrain a nuisance unless the right so to do was first established in a court of law; but this rule has been somewhat relaxed in modern times, and when the case is clear, so as to be free from substantial doubt as to the right to relief, or it is evident that a nuisance *per se* exists, equitable relief may be granted without first resorting to an action at law." *City of Pana v. Central Washed Coal Co.*, 260 Ill. 111. "Where the legal right of a complainant is clearly established and the unreasonable and unlawful use by the defendant of its property to the injury of the complainant is also clearly proved, it is not necessary that the question should first be determined in a suit at law." *Wente v. Commonwealth Fuel Co., supra.* To the same effect is *Wahle v. Reinbach,* 76 Ill. 322. In the instant case, appellees placed upon the witness stand forty witnesses who testified as did appellees themselves, in substance, that the effect of the operation of the trip hammers in appellants' plant was to jar their residences, crack the plastering, cause the china and glassware to rattle, to keep them awake nights and in other ways result in damage and annoyance to the residents of that vicinity. There was also evidence of contractors and others who had examined the home of appellees corroborating appellees as to the cracks in the plastering and walls of their home. The superintendent of appellants' plant himself testified that nothing could be done to lessen the noise or vibration caused by the large hammer. .

To overcome this proof appellants placed on the stand sixteen witnesses, several of whom were em-

ployees of appellants, who to a greater or less degree contradicted the testimony of the witnesses for appellees as to the annoyances and effect of the operation of the hammers. Under this condition of the proof, we are of the opinion that the chancellor who heard the cause and gave it consideration for a long period of time was in a position to determine what witnesses were entitled to the greater credit and was justified in finding that the operation of the appellants' plant was a nuisance *per se* and resulted in the annoyances and injuries to appellees complained of.

We are of opinion that the proof on the whole showed a clear case of irreparable injury to the appellees, and as it was admitted by appellants' superintendent that nothing could be done to lessen the noise or vibration caused by the large hammer, the decree of the court below was right and it is accordingly affirmed.

*Decree affirmed.*