# Edwin S. Fletcher and Charles Fletcher, Appellants, v. Town of Lisbon and George Skinner, Appellees.

## Gen. No. 6,885.

1. NUISANCE—*when injunction warranted without prior adjudication of fact of nuisance.* Notwithstanding the rule that equity jurisdiction should be sought sparingly in cases to restrain a nuisance, at least until the question of nuisance has been first settled at law, a permanent injunction was granted without first settling the question of nuisance at law, where the evidence was clear and convincing and of such a nature as to show that complainants were almost deprived of the use of their property during the time the blasting complained of took place.

2. NUISANCE—*when permanent injunction against a quarry justified.* A decree dissolving the temporary injunction and dismissing a bill to restrain defendants from blasting rock so as to throw rock, etc., on the premises of complainants, and cause black smoke, noxious gases and hot cinders to be thrown on or over such premises, was reversed with directions to enter a permanent injunction, where it appeared that complainants' lands had for many years been used for agricultural and stock purposes, and that the farm contained a dwelling, barn, etc., and opposite the highway adjoining it on one side the defendant city maintained a quarry about 268 feet from the dwelling, and that blasting caused showers of stone to strike the buildings and persons and animals, and caused general damage, and that dense smoke, vapors and offensive odors and gases were carried on and over the premises of complainants, and that the latter were almost deprived of the use of their property when blasting took place.

Appeal from the Circuit Court of Kendall county; the Hon. ADAM C. CLIFFE, Judge, presiding. Heard in this court at the April term, 1921. Reversed and remanded with directions. Opinion filed November 2, 1921.

SNAPP, HEISE & SNAPP and FRANK H. HAYES, for appellants.

MIGHELL, GUNSUL & ALLEN, for appellees.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellants, Edwin S. Fletcher and Charles Fletcher, filed their bill in the circuit court of Kendall county against appellees, the Town of Lisbon and George Skinner, for an injunction, restraining appellees from blasting rock so as to throw rock, debris, dirt and other material onto the premises of appellants, and restraining them from causing black smoke, noxious gas, offensive odors and hot cinders from being thrown on the premises. A temporary injunction was issued as prayed. A motion was made by appellees to dissolve the injunction. After appellees had put in their evidence, a stipulation was entered into that the hearing be treated as a hearing upon the merits. The chancellor dissolved the injunction and dismissed the bill for want of equity and an appeal was prosecuted to this court. At the October term, 1920, of this court the decree was reversed and the cause remanded with directions to enter a decree for a permanent injunction as prayed in the bill. A petition for a rehearing was granted and the cause is now ready for final disposition.

Upon this rehearing we have arrived at the same conclusions as expressed in our former opinion. The evidence shows that appellant, Edwin S. Fletcher, for many years prior to the filing of the bill was the owner of 240 acres of land in Kendall county, used for agricultural purposes and stockraising, and occupied by appellant, Charles Fletcher, as a tenant. On the farm was a dwelling house, barn and other outbuildings. A public highway extended north and south along the west side of the farm. In 1916, appellee, the Township of Lisbon, purchased land on the west side of this highway, directly across the road from the buildings of appellant and established a quarry about 268 feet from the dwelling house. Appellee, George Skinner, was in charge of this quarry for the township. The stone from the quarry was used for building roads, and was blasted by the

use of dynamite, the blasting resulting in showers of stone being thrown high in the air and for a great distance from the quarry. These stones varied in size from small fragments up to chunks as large as a human head. They struck the dwelling house, were thrown onto the porches, barn and cattle sheds, into the hog lot; they struck men at work on the farm and animals in the fields; they injured trees and caused general damage. The quarry was operated by means of a traction engine which burned soft coal and large volumes of dense black smoke, vapor, gases and offensive odors were emitted from the engine and were carried by the wind into and around the buildings and premises of the appellants, rendering it necessary to close the doors and windows in the summertime. The occupants of the premises could not use the lawn or porches, and sometimes the washing hanging in the yard had to be taken down and rewashed on account of this smoke and dirt.

The bill filed in July, 1920, alleged the facts substantially as above stated. Appellees answered the bill, admitting the allegations as to the ownership of the farm and its use, and the operation of the quarry since 1916, together with the use of the steam engine, but denied the allegations concerning the effect of the blasting and the throwing of stones and injury from smoke. The answer alleged that in 1919, a rope mat had been installed by appellees, which was placed over the blast before it was fired, and this mat intercepted all fragments of rock and prevented them from being thrown onto the premises of appellants, and since that date there has been no injury to the premises of appellants.

We have carefully read the evidence relative to the use of this mat, which was a carpet of one-half inch rope with a mesh of about two and one-half inches, was ten feet wide, about twenty-two feet long and required four men to move it. It is apparent that this mat has

reduced the damages considerably, but it has failed substantially to eliminate the entire trouble. The quarry was operated 31 days in 1919 and the mat was used during the last 10 days. There were ten blasts in 1920 before the injunction was issued. A picture of the mat was offered in evidence and shows that it is full of holes, some of them quite large and that one side of it is almost entirely destroyed. The evidence shows that sometimes three holes or blasts were discharged at the same time. The mat was only large enough to cover two of these holes and a part of the third. When the blast was discharged the fragments of rock went through the holes in the mat and around the edges and fell onto the premises of the appellants. A large stone fell into the yard only a few feet from where the housekeeper was hanging out the clothes. A large rock was thrown through the roof of the Benze house which was 325 feet from the quarry. The evidence also shows that considerable rock was thrown upon the premises of the appellants since the mat was put in use in 1919.

The contention of appellees is that there is a substantial dispute as to the facts in this case, and, where there is such a dispute, a court of equity will not interfere until the rights of the parties have been established in an action at law. In support of this contention appellees cited the case of *City of Pana v. Central Washed Coal Co.*, 260 Ill. 111. It is undoubtedly the law as was held in that case that such equity jurisdiction as is sought in this case should be exercised sparingly, with caution and only in extreme cases, at least until after the question of a nuisance has first been settled at law, and if there is any substantial dispute as to the facts or the law, a trial at law will be required before equity will intervene. In that case the rule is announced as follows: "The general rule formerly strictly enforced was, that a court of equity would not interfere to restrain a nuisance unless the

right so to do was first established in a court of law; but this rule has been somewhat relaxed in modern times, and when the case is clear, so as to be free from substantial doubt as to the right to relief, or it is evident that a nuisance *per se* exists, equitable relief may be granted without first resorting to an action at law." To the same effect is *Oehler v. Levy*, 234 Ill. 595; *Wente v. Commonwealth Fuel Co.*, 232 Ill. 526; *Deaconess Home & Hospital v. Bontjes*, 207 Ill. 553; *People v. Bushell*, 186 Ill. App. 229. In determining the right of an adjoining landowner to an injunction, courts will not consider the convenience of the public. *Village of Dwight v. Hayes*, 150 Ill. 273.

The evidence clearly shows that this nuisance existed as to both the rock and the smoke not only prior to 1919, when the mat was installed, but that since that time it has continued to such an extent as to entitle appellants to the relief prayed for in the bill. The evidence on this point is clear and conclusive and does not require appellants to establish their rights in an action at law, before an injunction will be granted. The evidence is of such a nature as to show that the appellants were almost deprived of the use of their property during the time this blasting took place, and against such an injury a court of equity will assume jurisdiction.

The decree dissolving the injunction and dismissing the bill was erroneous and will be reversed and the cause remanded with directions to enter a decree for a permanent injunction as prayed in the bill.

*Reversed and remanded with directions.*