## Taulbee v. Miller.

(Decided April 20, 1928.)

(As Modified on Denial of Rehearing, October 5, 1928.)

### Appeal from Perry Circuit Court.

1. Nuisance.—A livery stable is not per se a nuisance.

2. Nuisance.—Injunctions restraining carrying on of legitimate business should go no further than is absolutely necessary to protect rights of parties seeking injunction, and, if a business can be conducted in such way as not to constitute nuisance, it should be permitted to be continued in that manner.

3. Evidence.—It is a matter of common knowledge that stables are maintained in all cities and towns, and that they can be kept clean and free from escaping odors, from filth, and from flies.

4. Nuisance.—Owner of livery stable situated near plaintiff's residence property in business section of city should not be allowed to keep stallion therein.

5. Municipal Corporations.—City authorities have power to regulate keeping and use of stallions.

6. Nuisance.—Enjoining owner of livery stable in city, within 15 or 20 feet of plaintiff's residence property, from keeping in building hay or other things that might increase insurance rate on plaintiff's property, held error, since fire hazard of building did not make it a nuisance.

7. Nuisance.—In suit by owner of residence on adjoining lot to enjoin use of livery stable in city as nuisance, injunction should go no further than to require that building be kept clean, and that manure must not be allowed to accumulate in or around building, and that building be so managed and conducted that odors will not escape therefrom and contaminate atmosphere, and so that it will not be breeding place for flies.

SAUFLEY & WARD for appellant.

MOORE & SMITH for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, Mrs. Mat Taulbee, owns a building situated on the corner of High and Campbell streets in the city of Hazard, Ky. The lower story of this building, which is entered from Campbell street, is used as a livery stable, and horses and mules are kept therein. It is also used as a hitching place for horses and mules brought and driven to the city by people living in the country. The second story of this building, which is entered from High

street, is used as a storage place for hay, straw, grain, and feedstuffs. The appellee, Mrs. Mahala Miller, owns some residence property fronting on High street. Mrs. Miller has two residences on her property. The entrance to one of these residences, which we will call No. 1, is from High street. This residence adjoins this livery stable property, and is perhaps not more than 20 feet from it. This is now rented for $30 per month, though it is only a frame building of four rooms. Residence No. 2 adjoins residence No. 1, and abuts on High street, but the entrance to residence No. 2 is from Jail street. Residence No. 2 is located on the corner of Jail street and High street. Residence No. 2 was unoccupied at the time of this suit.

Mrs. Miller began this action, and sought to enjoin the use of this building as a stable and storage place for hay, straw, and grain, to enjoin the keeping of horses and live stock in the stable, and for a mandatory injunction to require the defendant to clean this stable, and to remove all manure therefrom and other things that cause unhealthy, dangerous odors and flies. After hearing the case the court entered an order enjoining Mrs. Taulbee (a) from maintaining and using this building as a stable; (b) from keeping therein horses or other live stock; (c) from keeping therein hay, straw, and other inflammable material, that would increase the fire hazard to it and adjoining property; (d) from permitting manure or other filth to accumulate in and around the building. From that judgment Mrs. Taulbee has appealed.

> "A person who lives in a city, town or village must of necessity submit himself to the consequences and obligations of the occupations which may be carried on in his immediate neighborhood, which are necessary for trade and commerce, and also for the enjoyment of property and the benefit of the inhabitants of the place, and matters which, although in themselves annoying, are in the nature of ordinary incidents of city or village life, cannot be complained of as nuisances." 29 Cyc. p. 1159.

A livery stable is not per se a nuisance. See Hyden v. Terry, 108 S. W. 241, 32 Ky. Law Rep. 1198; Albany Christian Church v. Wilborn, 112 Ky. 507, 66 S. W. 285, 23 Ky. Law Rep. 1820. Of course, this building may be so used and kept as to become a nuisance. The evidence indicates that this building had been so used that it had

become a nuisance, and was such when this action was begun.  Granting it had become a nuisance, it does not follow that it necessarily must forever remain such.  The judgment entered was very sweeping.  It went too far.

> "Injunctions restraining the carrying on of a legitimate and lawful business should go no further than is absolutely necessary to protect the rights of the parties seeking such injunction.  When a person is engaged in carrying on such business, he should not be absolutely prohibited from doing so, unless it appears that the carrying on of such business will necessarily produce the injury complained of.  If it can be conducted in such a way as not to constitute a nuisance, then it should be permitted to be continued in that manner."  Chamberlain v. Douglas, 24 App. Div. 582, 48 N. Y. S. 710.

Authority to the same effect is Joyce on the Law of Nuisances, p. 138, sec. 90.  In the case of Oehler et al. v. Levy, 234 Ill. 595, 85 N. E. 271, 17 L. R. A. (N. S.) 1025, 14 Ann. Cas. 891, a case involving a livery stable situated on South Lincoln street in the city of Chicago, the court enjoined the continued conduct of that stable in the manner it had been conducted, but declined to forbid its conduct in a proper manner. This is taken from that opinion:

> "It is also assigned as cross-error that the appellate court erred in not directing the superior court to enter a decree enjoining the appellant from keeping any horses in his building or upon the premises adjoining the property of the appellees.  The nuisance created by the appellant consisted in the manner of the use of his premises, and while the direction to the superior court, when incorporated in the decree of that court, practically will prohibit the appellant from maintaining his stable upon the said property, theoretically it does not.  The appellate court was not, as it states in its opinion, prepared to hold as a matter of law—and neither is this court —that a stable may not be kept in a residence district of a large city in such manner that it would not be regarded as a nuisance, and for that reason it refused to direct the superior court to enter a decree enjoining the appellant from keeping any horses in his building or upon his premises.  In this we think there was no error."

There are extensive notes attached to that case in 17 L. R. A. (N. S.) 1025, one of which is:

"Whether any particular stable is or is not a nuisance is essentially a question of fact, in the determination of which, the stable's location, its construction, and the manner in which it is conducted are elements to be considered. No cases have been found holding a stable a nuisance per se."

Mrs. Taulbee cannot avoid the deposit in this building of the natural excretions of the animals kept there, but she can prevent and must prevent the accumulation of such excretions, and their rotting and decay, with resulting odors escaping therefrom. If, from future experience, it is found that cannot be done, it may ultimately be found necessary to enjoin the use of this building as a stable at all, but we are not now prepared to say that that cannot be done. In the case of Louisville & N. R. Co. v. Birochik, 207 Ky. 595, 269 S. W. 720, we said that matters of common knowledge were known to the members of this court, and it is a matter of common knowledge that stables are maintained in all of our cities and towns, and that they can be kept clean and free from escaping odors, from filth, and from flies. Mrs. Taulbee must keep this one that way.

The proof shows that there is kept, in the upper story of this building, corn, oats, hay, straw, and certain prepared feeds, referred to as "Tuxedo." Just across Campbell street from this building is the Taulbee grocery store. Feed is handled in connection with that grocery, and the upper part of this building in question is used as a storehouse for that feed. Grain, hay and feedstuff, are legitimate and necessary articles of commerce. Mrs. Miller says the keeping of these things has resulted in rats and mice gathering there to feed thereon; that this building, as maintained by Mrs. Taulbee, has become and is a breeding place for rats and mice. The human race has warred on such vermin throughout its history, but it has never completely routed them. They infest our houses, our stores, our mines, and our ships, and, of course, a feed store, like a grocery, is especially attractive to such. Courts do not require people to do the impossible, and cannot require of Mrs. Taulbee to so keep this building that never a rat or mouse would be in it; but she can and should keep this building and its contents in such condition that it will not be a breeding place for such vermin.

There is evidence that one of the horses kept in this stable is a stallion. Such horses will neigh, nicker, whinny, and squeal. Such noises are a nuisance in this stable, situated as it is, and Mrs. Taulbee should not be allowed to keep that beast, or any other uncastrated male beast, in this stable. The city authorities have power to regulate the keeping and use of such animals. See 43 C. J. 314, note 52.

This building appears to be situated in the business rather than the residential section of the city, though there are residences in this neighborhood; but the most of the property in this neighborhood is not used for residential purposes. The evidence shows this is the only public place in this town where a horse ridden or driven in from the country can be hitched or kept. The use of the automobile has very largely eliminated the horse, but has not entirely done so, and we know that more horses are used in the hilly and mountainous sections of the state than in the level portions. There must be some place to take care of such animals.

Mrs. Taulbee was enjoined from keeping in this building hay or other things that might increase the insurance rate on Mrs. Miller's property. That was erroneous. There was proof that this livery stable was rated as a mercantile building, and that mercantile buildings take high rate, and cause high rates for adjoining property. This, the evidence showed, was because a stable is classed as used for commercial purposes, and that it would be so classed, if there were no hay or straw, in it. Mrs. Taulbee's building and Mrs. Miller's building are within 15 or 20 feet of each other, and each serves to increase the fire hazard to the other, with corresponding increase in rate; but that does not mean one of them must be torn down, and, if that were true, then the question would arise whose building must be destroyed.

In Radney v. Town of Ashland, 199 Ala. 635, 75 So. 25, L. R. A. 1917E, 366, the Alabama Supreme Court, citing Wood on Nuisances, vol. 1 (3d Ed.) sec. 148, said:

"We think the proper test of a nuisance in such cases is stated by Mr. Wood, in the text just above cited, as follows: 'In order to render a building a nuisance, by reason of the exposure of other buildings to danger from fire, the hazardous character of the business must be unmistakable, the danger imminent, and the use of such an extraordinary and hazardous character as to leave no doubt of the nui-

sance. The mere fact that the business carried on there is of a hazardous character, and largely increases the rates of insurance upon surrounding property, is not sufficient; it must appear, not only that the business or use to which the building is applied is hazardous, but also that it is conducted in such a careless manner, or in such a locality, as to make injurious results probable.' The author says, further, after reviewing the case of League v. Journeay, 25 Tex. 172, that, though 'the court do not pass directly upon the question as to what degree of hazard from fire must be proved, in order to make a use of property a nuisance, . . . there can be no question that it must be such . . . as makes dangerous results probable rather than possible.' ''

Measured by the above, the fire hazard of this building did not make it a nuisance. This building must be kept clean, and manure and other filth must not be allowed to accumulate in or around the building, and the building must be so managed and conducted that odors will not escape therefrom and contaminate the atmosphere, and manure in this building must be so managed and kept covered that it will not be a breeding place for flies. The injunction should go no further than we have indicated. By the improper conduct of it, Mrs. Taulbee had made a nuisance of what is ordinarily a legitimate business; but, instead of forbidding the continuance of the business, the court should have corrected the conduct of it, and have given Mrs. Taulbee an opportunity to continue the business and conduct it properly.

The judgment is reversed, with directions to so modify the injunction as to conform to this opinion.