### Henry Vogler, Appellee, v. Chicago & Carterville Coal Company, Appellant.

1. NUISANCE—*when obstruction of water course temporary.* Where a private corporation unlawfully places slack from its mine in a ditch the obstruction is temporary and such corporation cannot give it the character of a lawful permanent obstruction.

2. DAMAGES—*nuisance.* Recovery for damage to land submerged when defendant placed slack from its mine in a ditch can be had only to the time of the action even if permanent injury by the mine water is shown where it is not shown that such land was rendered wholly unfit for cultivation.

3. DAMAGES—*measure of, where nuisance destroys lands for cultivation or as a habitation.* It would seem if a mining company by unlawfully obstructing a ditch with slack rendered plaintiff's land wholly unfit for cultivation or destroyed it as a habitation or damaged his well, that recovery might be had for damage subsequent to the bringing of action if such condition could not be remedied by the abatement of the nuisance.

Appeal from the Circuit Court of Williamson county; the Hon. WILLIAM W. CLEMENS, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed March 10, 1913.

W. A. SCHWARTZ and HOSEA V. FERRELL, for appellant.

NEELY, GALLIMORE, COOK & POTTER, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

Judgment was rendered in favor of the plaintiff in the Circuit Court of Williamson county, Illinois, to reverse which the defendant prosecutes this appeal.

The declaration consists of two counts; the first count alleges in substance, that appellee was the owner of the southwest quarter of the N. W. ¼, Sec. 18, Tp. 8 South, Range two, called the east forty; also the S. E. ¼ of the N. E. ¼ of Sec. 13, Tp. 8 South, Range one east of Third Principal Meridian, called the west forty, and that he occupied the same as a residence and for agricultural purposes. That on April 20, 1906, the appellant wrongfully and unlawfully filled up a branch or natural drain flowing along the southwest corner of said premises with slack and waste substances from its mine and thereby unlawfully diverted and changed the natural drainage of the water that fell on and flowed off of the above described premises into said branch so that said water could not flow off of said land in the natural way, and the water that fell on said land was caused to be and remained standing on said land and that by reason thereof large quantities of water were caused to stand and remain upon the premises of plaintiff and his said premises and land thereby rendered incommodious, unhealthy and unfit for occupation and agricultural purposes, and otherwise greatly and permanently injured the land. The second count alleges that appellee occupied the said lands as a permanent home and the same was well improved with shrubbery, trees, well and outbuildings and that appellant from April 20, 1906, unlawfully pumped water out of its mine in large quantities and deposited the same so that it flowed over and across said lands and remained on said premises in large quantities and that by reason thereof the said lands and premises have been rendered unhealthy and unfit for occupation as a residence or for agricultural purposes and has been greatly depreciated.

It appears from the evidence in this case that said lands lie side by side, or nearly so, and that immediately south of them a slash of irregular shape covers a large area of land extending east and west beyond the lines of appellee's lands; that about one-fourth of a mile almost south of the southwest corner of the west forty and at the south edge of said slash a creek or branch extends therefrom off to the southeast and connects with Hurricane creek that has for many years been used as drainage for this slash. That plaintiff's residence was located near the southeast corner of the west forty.

Several years ago the appellant sunk a coal mine at a distance of about half a mile and almost south of the southeast corner of appellee's east forty and near the branch above referred to. That afterwards appellant erected a coal washing plant near its mine and near this drain and so conducted and managed its business as to permit the water used in washing coal to drain into this ditch or branch, causing such ditch or branch to be filled with slack to such an extent as to cause the waters and refuse to flow from said mine towards and into said slash and to prevent the said creek from carrying away the overflow into said slash and thereby caused the waters from said slash to submerge appellee's lands, or a portion of them and that by reason thereof for the last two years caused some fifty or sixty acres of appellee's land, as claimed by him, to overflow and rendered it unfit for cultivation, and also destroyed a well upon the said premises. There was no evidence offered by appellee as to the rental value of such lands but the evidence of appellant shows the rental value to be from two to three dollars per acre each year. The jury returned a verdict assessing the plaintiff's damages at $1,500.

Counsel for appellant has assigned as error the refusal of the court to set aside this verdict and grant a new trial and in support of this he assigns as one of

the principal reasons that the verdict of the jury is excessive.

We are of the opinion that all of the principal questions involved herein may be considered under this proposition.

The cause was tried by appellee apparently upon the theory that the nuisance complained of was permanent and of a character that could not be abated and that he was therefore entitled to the full depreciation of the value of his land. The nuisance complained of consisted in the filling up of a ditch with slack, etc., and caused the water to flow back into a depression in lands adjoining the appellee's and obstructed the natural drainage of the water and by reason thereof submerged appellee's land and rendered it unfit for cultivation.

The appellant was a private corporation and had no right or authority to create and maintain as permanent an obstruction of a waterway; if it did so, and it could be proven to be unlawful, then we see no reason why it should not be required to abate such nuisance. *Quasi* public corporations such as railroads, etc., have been granted by the state the right to condemn lands, and if necessary to erect permanent structures that may result injuriously to other persons, but this is not true of corporations like the appellant, which was created for private purposes and not authorized to erect unlawful structures that would injure another person, and should be abated and is not in its nature necessarily permanent and as to this class of nuisances we think the law of this state is well settled that the plaintiff is limited in its recovery of damages to the time of the commencement of the suit and is not entitled to recover permanent damages for the depreciation in the value of the property. In the case of Joseph Schlitz Brewing Co. v. Compton, 142 Ill. 515, the court in speaking of the differences that have arisen in the application of the rule for assessment of

damages says: "This confusion seems to arise from the different views entertained in regard to the circumstances under which the injury suffered by the plaintiff from the act of the defendant shall be regarded as a permanent injury. 'The chief difficulty in this subject concerns acts which result in what effects a permanent change in the plaintiff's land, and is at the same time a nuisance or trespass.' * * * Some cases hold it to be unreasonable to assume, that a nuisance or illegal act will continue forever, and therefore refuse to give entire damages as for a permanent injury, but allow such damages for the continuation of the wrong as accrue up to the date of the bringing of the suit. Other cases take the ground, that the entire controversy should be settled in a single suit, and that damages should be allowed for the whole injury past and prospective, if such injury be proven with reasonable certainty to be permanent in its character. * * * We think upon the whole that the more correct view is presented in the former class of cases." In support of which many cases are cited by the Supreme Court. We think it is well settled by the case last above cited that the obstruction here complained of was only temporary in its character and could not, by anything that appellant could do, be given the character of a lawful permanent obstruction, and that it was improper to permit proof of damages sustained subsequent to the commencement of the suit. Appellee cites and relies upon the case of *Chicago, R. I. & P. R. Co. v. Carey*, 90 Ill. 514, and *Strange v. Cleveland, C., C. & St. L. R. Co.*, 245 Ill. 246, but we do not think these cases in any manner change the rule laid down in the decision above cited. It was said in the case of *Canteen Hunting & Fishing Ass'n v. Schwartz*, 128 Ill. App. 224: "In cases of temporary nuisance resulting in injury, the right to recover is a continuing one, a cause of action accruing upon each recurring injury, for the particular damages sustained thereby, until the

nuisance is abated, but nothing can be allowed for depreciation of the market value of the premises. This is not affected, for the continuing right to recover particular damages as they may accrue, 'runs with the land' and compensates for the injury so long as it may continue, the presumption being that an illegal act will not continue forever."

Counsel for appellee, on page 15 of his brief, concedes that they have "No complaint to make with the argument of appellant and with the authorities cited on this question of damages, so far as the obstruction of the Arnold slough was concerned. We think that the measure of damages for such an obstruction would be the rental value of the lands. But this was not the real or at least the chief grievance. The chief and substantial grievance was the flooding of the land with the mine water. This is what caused a permanent injury to the land. Though the obstruction may be only temporary the injury inflicted is permanent; though the refuse could be cleaned out of Arnold slough at once the injury inflicted by the poisonous substance from the mine water cannot be removed from the soil. It has permanently injured the land of appellee; the injury is irreparable, it has killed the land." This, however, does not change the rule with reference to the time to which damages may be recovered. The rule above announced is that they are limited to the time of the commencement of the suit and cannot recover for depreciation in value or for future damages. There is no evidence in this record showing that these lands cannot or would not, by the removal of the obstruction, ever be fit for agricultural purposes or would not produce when properly cultivated. The testimony simply is, that it killed the land, which, for ought this record shows, may and doubtless would be temporary. If it is true that the unlawful acts done by appellant prior to the bringing of this suit wholly destroyed appellee's lands and wholly rendered it unfit for cultivation hereafter, or damaged the well or did any other

damage that destroyed it as a habitation and which could not be remedied by the abatement of the nuisance, and if these facts were fully developed it might be then that a different rule would apply. We do not understand that where property is occupied as a home and that by reason of a nuisance created he has been damaged, that he is limited to the rental value of the land but his damages may be measured by his discomfort and the deprivation of the healthful use and comforts of his home. *N. K. Fairbank Co. v. Nicolai*, 167 Ill. 242.

The evidence in this case offered by appellee does not go to the extent that the land had been permanently and irreparably injured for the witness Parsons, who had been a tenant upon the lands says: "Well it would not be worth anything to me for a home unless this water was taken off of it. It is dangerous to health and it is badly in the way for handling stock over the farm; has pasture shut off; have one pasture shut off now so we cannot use it for the water." And appellee in his testimony says, "Fifty or sixty acres of the land was not worth anything to me for the last two years." The evidence offered by appellee in this case would not warrant a court in rendering judgment for depreciation in the value of the land, as appellee claims he had been deprived of the use of only fifty or sixty acres of the land for the last two years, and all of the evidence in the record shows the rental value to be only from two to three dollars per acre, certainly would not warrant a verdict for the amount given in this case; while it may be true that if the appellee was occupying the place as a home he would not be limited to the rental value for his damages, yet he certainly cannot, under the conditions here presented, be entitled to the depreciation in value of said lands as claimed.

Objections have been made by counsel to questions asked and instructions given but we think upon another hearing of this case the court will be governed by the

principles above laid down and that no necessity exists for a minute discussion of such errors.

The verdict and judgment in this case is manifestly against the law and the weight of the evidence and the judgment is reversed and cause remanded.

*Reversed and remanded.*