Ollie Collins et al., Appellees, v. Cosgrove-Meehan Coal Company, Appellant.

Opinion filed January 4, 1935.  Rehearing denied February 25, 1935.

WARDER & ZIMMERMAN, for appellant.

J. Roy Browning, of Chicago, for appellees; Harold E. Bailey, of Chicago, of counsel.

Mr. Presiding Justice Edwards delivered the opinion of the court.

Appellees recovered a verdict and judgment against appellant, amounting to $1,000, in the circuit court of Williamson county, for damages alleged to have been sustained through the overflow water from the coal mine of the latter, over the farm lands of the former.

It appears that appellant, in 1930, began pumping water from its mine into a ditch which flowed through appellees' farm; that the ditch, due to a sediment in the mine water, became filled, and the water overflowed the banks and filled a depression caused by a subsidence of the earth, due to mining beneath, to a depth of about three feet; that this pond, thus formed, covered three and one-half acres; that when heavy rains came, it caused the flooded area to reach out until it covered in the neighborhood of five acres; that the water was charged with mineral settlings, and was known as copperas water; that the effect of such water was to kill the vegetation, and that when it evaporated it would leave a white sediment resembling salt upon the surface of the land.

In 1931, appellees brought suit for damages, and in 1933 the cause was tried, with the result before mentioned.

In 1926, appellee, Ollie Collins, who was the mother of the other appellees, gave appellant a written consent to flow its mine water into the ditch, provided such water was to be confined to the channel of the natural watercourse. Appellant was also therein given authority to enter the land for the purpose of deepening and defining the channel, as might be necessary in order that the water should be confined therein, and not overflow the adjoining ground. It appears that appellant failed to keep the channel clear, with the resultant overflow and consequent damage.

The trial court permitted appellees to make proof of the market value of the land that actually overflowed, as well as the whole 40-acre tract constituting the farm, both before the overflow and also thereafter, on the theory that a permanent injury was shown, and that appellees would be entitled to recover therefor the amount of the depreciation in the value of the land, resulting from such overflow. Appellant objected to this testimony, as not the proper measure of damages, and the court's ruling thereon is the principal ground urged for a reversal of the judgment.

The competency of such testimony as to damages is dependent upon whether the injury sustained was temporary or permanent; the rule being: "If a private structure or other work on land is the cause of a nuisance or other tort to the plaintiff, the law will not regard it as permanent, no matter with what intention it was built, and damages can therefore be recovered only to the date of the action. But in the case of permanent injury caused by lawful public structures properly constructed and permanent in their character, damages may be allowed for the whole injury, past and prospective." *Schlitz Brewing Co. v. Compton,* 142 Ill. 511; *Fairbank Co. v. Bahre,* 213 Ill. 636.

In *Canteen Hunting & Fishing Ass'n v. Schwartz,* 128 Ill. App. 224, this court held that in cases of permanent injury to land or other realty, the true measure of damages is the depreciation in value of the land, arising from the injury, together with any special items of damages which may be shown; while in instances of temporary nuisance or tort, resulting in detriment to the landowner, the right of recovery is continuing, a cause of action arising upon each recurrence of the injury, for the particular damages occasioned as a consequence, until the cessation of the nuisance, but that depreciation of the market value of the premises is not a proper item of damage, it not being presumed that the illegal act will continue per-

petually, and that the continuing right to sue for each recurring injury compensates for the damages sustained, as long as it may continue.

To apply the rule, it is necessary to consider the proof, to determine whether the injury sustained was permanent or temporary. Appellees insist that the testimony shows the chemically and minerally laden water from the mine so poisoned the soil that it was rendered unproductive and valueless, and would thus continue for so long a period of time as to amount to practical irremediability; hence it was a permanent injury. If the evidence justifies such conclusion, appellees were entitled to make the proof allowed by the trial court, as ruled by this court in *Vogler v. Chicago & Carterville Coal Co.*, 180 Ill. App. 51.

The evidence bearing upon the question of permanent impairment of the fertility and productiveness of the soil, resultant from such overflowage, is the testimony of three witnesses. Bob Richmond stated that the mine water destroyed the vegetation; that after it ceased flowing over the land, the soil would after a time regain its fertility, but that same would not result before two or three years.

Ed Thome testified that he had never known of land, overflowed by mine water, that was any good; that he had known one piece for 15 years, and the vegetation consisted of cat-tails; that he would not say the land could not be made again productive.

It will be observed that Thome's testimony is indefinite and vague. It does not appear from his statements that any of the overflowed land which he observed had been made the object of any effort to recultivate when the water subsided. For aught that appears, it may have been permitted to lie idle and fallow, with no attempt to restore its productivity.

Charles Iken was called as a witness and testified that he had seen such lands, for 14 years, with nothing but cat-tails growing upon them, and that timber and

trees thereon would die. It does not appear whether his testimony related to the condition of the land while covered by mine water, or afterwards; furthermore, he did not state any opinion as to whether the land, when free of the water, would regain its fertility, or could be made productive by proper husbandry.

The evidence bearing upon the question of the permanency of the injury to the soil lacked in definiteness to establish that its condition, after the subsidence of the water, would be one of practical irremediability. For all that is shown by the proof, the land might with proper care and attention, as testified to by Richmond, regain its productive qualities after the lapse of two or three years, and if so it certainly was not permanently injured.

It may be, as a fact, that appellees' land has sustained an injury permanent in its nature, but such is not established by the evidence, and the burden was upon them to make such proof. Upon this record it is our conclusion that the proof does not establish that the overflow inflicted a permanent injury; hence we are of opinion that the court should not have permitted appellees to offer evidence of permanent damages concerning depreciation in the value of the land. *Vogler v. Chicago & Carterville Coal Co., supra.*

Appellant states that the case should be reversed without remanding, for the reason that Ollie Collins is not entitled to recover by reason of her written permit to appellant to pump water into the ditch, and that her children have no cause of action.

With this we do not agree; and inasmuch as appellees, upon a retrial of the cause, may make further, additional or more certain proof as to the permanency of the injury to the soil, or, if not able so to do, may offer proof as to the damages actually sustained up to the commencement of the suit, as for a temporary injury, the cause will be remanded for a new trial.

*Reversed and remanded.*