Felice Menolascino, Appellee, v. Superior Felt and Bedding Company, Appellant.

Gen. No. 41,858.

558

Opinion filed March 18, 1942. Rehearing denied April 1, 1942.

IRVING G. ZAZOVE and SAMUEL J. WINOGRAD, both of Chicago, for appellant.

RICHARD G. FINN, GERALD T. WILEY and HALFPENNY, STARK & HAHN, all of Chicago, for appellee; RICHARD G. FINN, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal from a judgment for $5,000 entered in the superior court of Cook county, on November 20, 1940, in favor of plaintiff and against defendant, Superior Felt and Bedding Company, on a verdict of a jury. The pleadings upon which this action was tried, after some corrections and amendments, appear to have been an original complaint which was filed on November 1, 1935, based on the charge that defendant maintained a public nuisance by operating its mattress factory at 2447 West Roosevelt Road, Chicago, in violation of sections 2395 and 3824 of the 1931 City Code, which specially damaged plaintiff's property, located directly across the street, by reducing its rental value, and also specially damaged the plaintiff by discharging into the air great quantities of lint, dust, fluff, nap, and other dirty and waste substances which rendered the air in the neighborhood unwholesome and unfit to breathe, and that as a result thereof plaintiff's health was injured in that said substances infected her lungs and sinuses, causing her to spend large sums for medical care.

On motion of defendant the original complaint was stricken and on December 29, 1936, plaintiff filed an amended complaint making the same charges and the same allegations of injuries and damages as in the original complaint, the only change being that the ordinances were pleaded in *haec verba* rather than by reference as was done in the original complaint.

This complaint as amended was stricken and on May 9, 1939, on leave of court, plaintiff filed a second amended complaint based on charges of negligently and carelessly operating the mattress factory from November 1, 1933 to November 1, 1935, so as to discharge into the air, in the vicinity, great quantities of lint, dust, fluff, nap and similar substances, which rendered the air unfit to breathe by persons lawfully in the vicinity, including the plaintiff, which defendant knew or should have known; that during said period plaintiff owned and resided upon the premises located

at 2454 West Roosevelt Road in the vicinity of defendant's factory; that plaintiff was in the exercise of due care and as a proximate result of defendant's said carelessness and negligence plaintiff's lungs, sinuses, throat and chest became infected and diseased, and that her injuries are permanent. The damages claimed were for past, present and future pain and suffering, and the expenditure of money for medical care and other treatment, and future payments for such purposes.

Defendant admitted the ownership, management and operation of the building and mattress factory in question, denied all the other allegations, and filed a special plea of the statute of limitations. No replication was filed to this special plea of the statute of limitations. Plaintiff appellee suggests, in answer to the statement in defendant's brief that ''No replication was filed to this special plea of the statute of limitations . . . and consequently the facts set forth are admitted,'' that on June 2, 1939, plaintiff filed a motion to strike the answer and pleas to the second amended complaint, which motion to strike directly denied the allegations set up in the answer and pleas theretofore filed by the defendant; that on June 20, 1939, a hearing was had before the court who at that time heard the arguments of counsel with respect to the statute of limitations and entered the following order:

''It Is Ordered that defendant's Answer and Pleas to Second Amended Complaint be and the same is stricken.

''The defendant, electing to stand upon its said Answer and Pleas to Second Amended Complaint, is hereby adjudged in default, for failure to file a new answer or plead to said Second Amended Complaint, and it is so ordered.

''It Is further ordered that this case be set for hearing upon said Second Amended Complaint on September 21, 1939, to determine plaintiff's damages.''

That subsequently, on September 21, 1939, the previous order striking the defendant's answer, but not the pleas, was vacated and set aside. The defendant made a motion for a jury trial and the case was set for trial.

When the instant case was first called for trial the court, after reading the authorities, stated that he did not believe that the question of negligence had anything to do with the case and at that time the plaintiff was permitted to amend her complaint by striking out the words "carelessly and negligently" in paragraph two of her complaint. Later an order to that effect was entered by the court as follows: "Leave is given the plaintiff to file his second amended complaint and to amend the same by striking out the words negligently and carelessly in paragraph 2 thereof." This order was entered during the course of the trial on November 30, 1940. It appears from the record that no action, either in the way of an answer, motion to strike, or objection to the striking out of the words "carelessly and negligently" was taken by the defendant.

From the statement of facts, established by the evidence heard by the court and jury, it appears that defendant operated a large factory at 2447 West Roosevelt Road, engaging in the manufacture and processing of cotton mattresses, pillows, and other products of like nature. Several years after the defendant had set up its factory the plaintiff, Felice Menolascino, and her husband purchased (in 1926) a home across the street. The home was one of a number of homes in a block of buildings which ran from Campbell avenue on the west about one-half block to the east. These buildings had been there for many years. For several years plaintiff lived in the neighborhood and the factory operated its business without any complaint. Plaintiff at that time was in perfect health, had never had anything wrong with her nose, her

sinuses, her throat, or her chest. She weighed about 116 pounds and, according to the testimony of a doctor who had taken care of her little girl, was in radiant health. Plaintiff's bedroom was located in the front of her house directly across the street from the mattress factory. In about 1932 the defendant's factory began to discharge great quantities of cotton linter, described by witnesses as a grayish white dust. Numerous neighbors testified to the conditions pertaining in the neighborhood between 1933 to 1935 as a result of this great discharge from defendant's premises.

One witness, Dominick Cherin, who lived next door testified to the frequent and almost daily discharge of this snow-like cotton, saying that it came from a blower, and that when the wind was from the south the stuff "was flying around through the windows into the flats," and that it was so bad he could not breathe; that the furniture was covered with it, as well as the sidewalks; that frequently defendant's employees gathered up and swept off the sidewalks; that upon at least ten different occasions he had complained to the defendant of the conditions; that they took sacks of this "stuff" off the roof; that in 1935 or 1936 he started a suit against defendant for damage to his property; that when the cotton was coming from the factory you could not breathe the air; and that, in 1936, after suit had been started, the conditions were alleviated.

There was the further evidence of Fred Lang who testified for plaintiff that he had formerly been an employee of defendant company, working in the basement where the cotton was chopped up. It appears that there was a large hopper into which the baled cotton was thrown, and that it was his duty to open the bales and throw it into the hopper. He said there was lots of dust from this operation. He also owned a home at 2423 Roosevelt Road, and testified that the dust from the hopper where he had worked was the same

dust which was discharged about the neighborhood and onto his as well as his neighbor's premises; that he was affected personally by this dust being blown up his nose, mouth and ears, and that at one time between 1932 and 1935 the condition in his home was awful; that the sidewalk was filled every day, every hour, an inch thick for two or three weeks; and that he made complaints to his straw bosses and told them to fix it and that they laughed at him. Numerous other witnesses corroborated these stories. Witness, Danny Cherin, 2450 Roosevelt Road, testified to substantially the same things. He also testified that he noticed in the morning he would constantly have to sneeze and his throat would dry up; that "it made you constantly sneeze and that your eyes would get red"; and that at times it was so bad it made breathing difficult. There were other witnesses who testified and a witness named Emil Van Hoorde, who lived just east of the factory in question. His back porch overlooked the roof of the factory. He was a chemist and when questioned as to how he knew that the dust was coming from the factory said "Of course, I could see—right there from the factory—it was right straight from there—there was no question about it, the whole roof on the factory was full and all over was this stuff and they put up there some of the new parts—it was all full—there was no question about that." He further testified that he had to go to one of his friends, a specialist for sinus trouble; that it did not get into his lungs, but that it affected the general condition of his sinuses and respiratory organs. Other witnesses testified as to the conditions that appeared to be present in the vicinity of the factory.

In answer to hypothetical questions, both Dr. Lipman and Dr. Snitman, eye, ear, nose and throat specialists, testified that the facts stated in the hypothetical question were sufficient from a medical and surgical point of view to cause or bring about the

nasal polyps and the asthmatic condition from which the plaintiff had suffered, and gave as the basis of their opinion, that the continual exposure, day and night, sleeping or awake, to the continuous inhalation of the cotton lint could cause or bring about the nasal polyps and the asthma.

The defendant produced three employees of the factory, one a foreman, and two laborers, all of whom testified that although the factory produced as many as 1,100 mattresses per day and chopped up as many as 20 to 25 bales of cotton in the course of such a day they never saw any dust about the factory. The blower in question was installed and serviced by a separate company. It further appears from the evidence offered by defendant that it has been operating a mattress factory for 20 years; that the factory was on the south side of the street and plaintiff has lived on the north side of the street for 14 years; that the factory equipment was the same as it is now since 1928; that bales of cotton are wheeled in on hand trucks, opened with a hook and the cotton thrown in a hopper, which tears it apart; and that from each machine there are pipes leading to a blower system which collects the dust. One can see the cotton during the process as it falls automatically from one machine to another, where the cotton is combed like wool and turned in on rolls. Men with sticks pat the lumps out of it, which creates a little dust, but defendant contends it is all inside the machine which is located in the basement below the street level.

The position of the defendant is based upon the theory that the plaintiff must allege and prove negligence on the part of defendant and the exercise of ordinary care upon the part of plaintiff. · This is the issue involved in this case. The plaintiff contends on this issue that the authorities consistently have held that in an action based upon a nuisance of this character the carelessness or negligence on the part of de-

fendant is immaterial and that the failure on the part of plaintiff to exercise ordinary care is not a defense. It is urged that since the courts have held that there is no necessity on the part of plaintiff to move, citing *Laflin & Rand Powder Co. v. Tearney,* 131 Ill. 322, and *Oehler v. Levy,* 234 Ill. 595, and that the defendant does not acquire a prescriptive right to maintain a nuisance, the only question then arises as to whether or not the plaintiff could have done anything to avoid inhaling this noxious dust which permeated the atmosphere of her home. In 46 C. J. 663, the general rule is stated as follows:

"As a general rule, negligence is not involved in nuisance actions or proceedings, and is not essential to the cause of action. If a particular use of property causes a nuisance this fact is sufficient to entitle a person injured thereby to relief. If a nuisance exists, the fact that due care was exercised and due precautions were taken against the annoyance or injury complained of is no excuse. The fact that defendant has used the ordinary means to avoid the nuisance complained of which are used in general by others engaged in the same business is no defense. A nuisance may be created or maintained with the best or highest degree of care." This same authority, 46 C. J. 665, on the subject of contributory negligence, says:

"As a general rule, contributory negligence in its ordinary meaning is not applicable to an action sounding in nuisance." On this question of the necessity of there being negligence or carelessness on the part of the defendant, or due care upon the part of the plaintiff, in an action of this character, plaintiff cites *O'Connor v. Aluminum Ore Co.,* 224 Ill. App. 613; *Laflin & Rand Powder Co. v. Tearney,* 131 Ill. 322; and *Cooper v. Randall,* 53 Ill. 24. In *McFarlane v. City of Niagara,* 247 N. Y. 340, Justice Cardozo in expounding the theory of nuisance, said:

"Nuisance as a concept of law, has more meanings than one. The primary meaning does not involve the element of negligence as one of its essential factors . . . One acts sometimes at one's peril. In such circumstances the duty to desist is absolute whenever conduct, if persisted in, brings damage to another . . . Illustrations are abundant. One who emits noxious fumes or gases day by day in the running of his factory may be liable to his neighbor though he has taken all available precautions . . . He is not to do such things at all, whether he is negligent or careful." In 29 Clyc. of L. & P. at page 1155, the fundamental principle is laid down as follows:

"The question of negligence is not involved in an action for the creation or maintenance of a nuisance, and hence no negligence need be shown in order to establish defendant's liability in damages or plaintiff's right to an injunction, nor can a showing that there is no negligence defeat a recovery." We are inclined to agree with the plaintiff that contributory negligence on the part of the plaintiff was not in issue in the present case, nor the question of whether defendant was negligent or careful.

It is contended by the defendant that the trial court erred in refusing to direct a verdict for defendant and also in refusing to enter a judgment notwithstanding the verdict, which is not based upon the pleadings. In reply to this contention of defendant, plaintiff answers that under the decisions in Illinois it is entirely immaterial as to whether the actions of defendant in diffusing these noxious materials over the neighborhood and permeating the air of plaintiff's home were charged to be careless or negligent or were charged to be a nuisance. Plaintiff relies on the case of *O'Connor v. Aluminum Ore Co.*, 224 Ill. App. 613, in which it was held that "If the facts alleged, of themselves, constitute a nuisance, it is not necessary to further char-

acterize them by the use of the word 'nuisance,' nor is it necessary to aver or prove negligence.''

The question which we have to consider is whether the evidence offered supports the allegation of the complaint and, if so, it is a question entirely for the jury. [However, the question as to whether the allegations state the law correctly, so that the evidence that was offered supports the allegations is an important one.] After careful consideration of the facts as they appeared in this record, we are of the opinion that the evidence is sufficient to support the verdict. With reference to the question of the statute of limitations, the lower court was undoubtedly correct in striking the pleas to that effect. In each of the complaints, the original complaint, the amended complaint, the second amended complaint, and in the complaint as amended during the course of the trial when the words ''carelessly and negligently'' were stricken therefrom, the allegations of the defendant in discharging the lint, dust, etc., into the air, and the effect upon the plaintiff, upon her lungs, and the permanent effect upon her health, were all the same. The answer seems to be well stated by the plaintiff, namely, that the fact that the plaintiff in the second amended complaint charged that such action of the defendant was negligent is entirely immaterial. It is urged that section 46 of the Civil Practice Act, par. 2 [Jones Ill. Stats. Ann. 104.046], expressly permits amendments of this character, and that in many decisions, including the cases of *Metropolitan Trust Co. v. Bowman Dairy Co.*, 369 Ill. 222, and *Wanless v. Peabody Coal Co.*, 294 Ill. App. 401, the courts have permitted amendments of this character to be made if the transaction or occurrence out of which the causes of action arose was the same. Considering this question, it would appear that the transaction or occurrence out of which the actions in the respective complaints arose was the same, and that the actions arose out of the acts before the court. The

defendant argues, however, that a cause of action for personal injuries has a different statute of limitations from an action for nuisance; that under the statute actions for personal injuries are barred in two years unless suit is brought within that time, and that a suit based on nuisance is not barred until five years have elapsed. It is urged by plaintiff that defendant's argument is based upon a misinterpretation of section 16 of the statute of limitations [Jones Ill. Stats. Ann. 107.276], and that, whether a cause of action for a nuisance is barred within two or five years, would be entirely dependent upon whether or not it was a cause of action for injuries to the person, or injuries to property. Our attention is called to *Desiron v. Peloza,* 308 Ill. App. 582, where sections 14 and 15 of the statute of limitations (Ill. Rev. Stat. 1939, ch. 83, pars. 15, 16 [Jones Ill. Stats. Ann. 107.274, 107.275]) are interpreted in relation to an action under the Dram Shop Act and where it was held—as in the case of *Handtoffski v. Chicago Consolidated Traction Co.,* 274 Ill. 282— that the limitations in the paragraphs in question are not based upon the form of the particular action, but on the particular injury sued for. In other words, it would be entirely immaterial so far as the statute of limitations was concerned as to whether the form of this action was in negligence or in nuisance, but that the question of the statute of limitations would be dependent upon whether a claim was for personal injuries or one for property damage. When we come to consider this question and the facts offered in evidence, we are of the opinion that the cause of action was the same, and that the question of whether negligence was charged or a nuisance, under the statute of limitations, would be dependent upon whether the claim was for personal injuries or one for property damage. In considering the facts as we have stated them, we believe under the circumstances that the court was justified in submitting the cause to the jury.

Defendant's next point is that the trial court erred in giving improper instructions for plaintiff and in refusing proper instructions requested by defendant. One of the instructions tendered by defendant and refused by the court, was defendant's instruction No. 1, which read:

"The Court instructs the jury that even though you should find, from a preponderance of the evidence, that the condition of the plaintiff Felice Menolascino was brought about by the action of the defendant, still if you further find that the plaintiff could have avoided such condition by the exercise of ordinary care, and that she negligently failed to do so, then you are instructed that the plaintiff would not be entitled to recover, and it will be your duty to find the defendant not guilty." The defendant's argument is that none of plaintiff's given instructions touched upon the question of due care, but that all of plaintiff's instructions were based upon the theory that defendant's liability depended upon its maintenance of a nuisance, and that in such cases contributory negligence is no defense. It is, of course, unnecessary to cite authority that want of ordinary care in negligence cases is a complete bar. In *David M. Swain & Son v. Chicago, B. & Q. R. Co.*, 252 Ill. 622, cited by defendant as an authority for its position—that to recover damages arising out of a nuisance it must appear that plaintiff was in the exercise of reasonable care—the court said:

". . . but if another person in attempting to use the highway in the exercise of reasonable care, falls into the trench and receives a personal injury, or if his horse should fall into the ditch and receive an injury, clearly an action would lie for the special damage to his person or his property." In the further case of *McEniry v. Tri-City Ry. Co.*, 254 Ill. 99, the court, in discussing under what circumstances a public nuisance may become a private nuisance, said:

"Such a nuisance may also under some circumstances sustain a private action for special damages to an individual in which the unlawful character of the obstruction would form the basis of the action. In such case the injured party would be required to allege and prove the unlawful character of the obstruction, and this fact, coupled with the proof of special injury and freedom from contributory negligence on the part of the plaintiff, would warrant a recovery." The plaintiff contends that the court was justified in refusing defendant's instruction No. 1, for the reason that in an action based upon a nuisance, as in the case at bar, contributory negligence is not a defense. In *Laflin & Rand Powder Co. v. Tearney*, 131 Ill. 322, the court said:

"As a general rule, the question of care or want of care is not involved in an action for injuries resulting from a nuisance. If actual injury result from the keeping of gunpowder, the person keeping it will be liable therefor, even though the explosion is not chargeable to his personal negligence." And in *Johnston v. City of Galva*, 316 Ill. 598, it is said:

"The rule requiring the injured party to protect himself from the consequences of the wrongful act of another by the exercise of ordinary effort, care and expense on his part does not apply in cases of nuisances." In the instant case we agree with the plaintiff's theory that contributory negligence is not a defense.

It is further objected by defendant that the refusal to give defendant's instruction No. 2 and in giving plaintiff's instruction No. 14 was error. The defendant's refused instruction read:

"The Court instructs the jury that if you find the issues for the plaintiff and against the defendant, and if you further find that the plaintiff has sustained damages, then in assessing such damages you have no right

to consider any damages suffered or sustained by the plaintiff after November 2, 1935." November 2, 1935, was the date of the filing of this action. It is contended by defendant that where damages are sought by reason of the maintenance of a continuing nuisance, as distinguished from a permanent nuisance, the plaintiff is limited to only such damages as he or she may have suffered up to the time of the filing of the complaint, and it is urged that plaintiff recognized this rule in her pleadings by specifically limiting defendant's negligence in the second amended complaint from November 1933 to November 2, 1935. In support of its contention defendant cites *Schlitz Brewing Co. v. Compton*, 142 Ill. 511. The plaintiff, however, submits that the evidence clearly showed that by November 1, 1935, the date of this action, the nuisance in question had set up within the plaintiff a chronic ailment. It is urged that the record shows that after the suits were started the defendant changed the conditions in the factory so that it no longer spewed this noxious material over the neighborhood, but that, by that time, the injuries to plaintiff had become so severe that the medical testimony showed without contradiction that there had been fastened upon her chronic and permanent injuries to the nose and throat from which she would never recover. It does appear from the testimony of the doctors that the injuries were permanent. The court did not err in refusing to give the defendant's instruction limiting plaintiff's recovery to previous injuries sustained.

The next instruction complained of is plaintiff's given instruction No. 14, which is as follows:

"The court instructs the jury that if from a preponderance of the evidence and under the instructions of the Court, you find for the plaintiff; in such event in determining the amount of damages the plaintiff is entitled to recover in this case, if any, the jury have a right to and they should take into consideration all the

evidence pertaining to the plaintiff's physical injuries, if any, so far as such injuries are the proximate result of the conditions complained of in the second amended complaint, as such conditions, if any, are shown by the evidence, to have existed prior and up to the commencement of this suit; the nature and extent of such physical injuries, if any, are shown by the evidence, her suffering and loss of health, if any, attributable to such conditions, and such future suffering and loss of health, if any, as the jury may believe from the evidence before them in this case she will sustain by reason of such conditions; all moneys necessarily expended or become liable for, for doctors' bills and hospital bills while being treated for injuries so received, if any, are shown by the evidence, and may find for her such sum as in the judgment of the jury under the evidence and instructions of the court will be a fair compensation for the injuries she has so sustained or will sustain, if any, so far as such damages are alleged in the second amended complaint and proven by a preponderance of the evidence." It is urged that the court erred in instructing the jury that plaintiff could recover for such "future suffering" and for the injuries she has sustained "or will sustain," citing in support of its contention the cases of *N. K. Fairbank Co. v. Bahre*, 213 Ill. 636; *Schlitz Brewing Co. v. Compton*, 142 Ill. 511, and *Atchison, T. & S. F. R. Co. v. Jones*, 110 Ill. App. 626. The plaintiff justifies this instruction by saying that she is entitled to recover any and all damages, past, present, and prospective, which are shown to be the proximate result of the actions of the defendant up to the first of November 1935, as alleged in the complaint. The case of *Schlitz Brewing Co. v. Compton*, *supra*, is criticized by plaintiff as not being a personal injury action, but rather a property damage suit, and it is pointed out, that by reason of the fact that the nuisance there involved was a continuing rather than a permanent one, the court

held that only those damages could be recovered up to the commencement of the suit. The basis for this decision is that each repetition of the nuisance gave rise to a new cause of action and that the plaintiff might bring successive actions as long as the nuisance lasted. As suggested by plaintiff, the application of this doctrine to an action for injuries would be a farce. It would mean that each time defendant threw the dust, lint, fluff, etc., into the plaintiff's home she would have to start a new suit and, if necessary, a new suit each day for the separate injuries she had received on that day. The controlling question is not whether the nuisance itself is continuing or temporary, but rather whether the injury set up or caused by the nuisance is temporary or permanent. In *Collins v. Cosgrove-Meehan Coal Co.*, 279 Ill. App. 98, which case distinguished the *Schlitz Brewing Co.* case, *supra,* the court said:

"To apply the rule, it is necessary to consider the proof, to determine whether the injury sustained was permanent or temporary. Appellees insist that the testimony shows the chemically and minerally laden water from the mine so poisoned the soil that it was rendered unproductive and valueless, and would thus continue for so long a period of time as to amount to practical irremediability; hence it was a permanent injury. If the evidence justifies such conclusion, appellees were entitled to make the proof allowed by the trial court, as ruled by this court in *Vogler v. Chicago & Carterville Coal Co.*, 180 Ill. App. 51."

In the matter of instructions, defendant further complains of plaintiff's given instruction No. 5, which is as follows:

"The court instructs the jury that the fact, if it is a fact, that the defendants were operating their business at the place in question prior to the time the plaintiff acquired the adjacent premises as a residence will not relieve the defendant of liability, if by the preponderance of the evidence and under the instructions of the

court you find they are otherwise liable." It would seem that this instruction is supported by law and correctly states it. The fact that defendant may have been operating its business when the plaintiff acquired the adjacent property is immaterial and does not constitute a defense. (*Laflin & Rand Powder Co. v. Tearney*, 131 Ill. 322.) Defendant's further argument is that this instruction leaves the jury free to find defendant guilty on any grounds that might appeal to them and throws the burden on defendant of disproving liability. The liability of the defendant under the instruction expressly depends upon the jury's finding that by a preponderance of the evidence and under the instructions of the court the defendant was otherwise liable, referring, of course, to the charges in the complaint, the only instruction directing a verdict for plaintiff was plaintiff's instruction No. 2, which required the plaintiff to prove the various elements alleged in the complaint by the preponderance or the greater weight of the evidence.

There is also the further charge made by defendant that the court erred in giving plaintiff's instruction No. 3, for the reason that it is abstract in form. The same objection might be made to any instruction which defines some term applicable to any case, such as "negligence" or "proximate cause," still they are proper.

Complaint is made that the court erred in giving plaintiff's instruction No. 2, which directed a verdict for plaintiff in event the jury should find from the evidence that the plaintiff had proven her case as alleged in the second amended complaint, which instruction followed exactly the allegations of the second amended complaint as amended. It contains all the elements necessary to establish the plaintiff's cause of action and requires as a condition precedent to recovery that the jury find all such elements present before the plaintiff could recover. The objection that it omitted the question of due care and lack of contribu-

tory negligence is answered by the authorities hereinabove discussed on the question of whether contributory negligence is a defense in this action.

The defendant further continues to offer objection to certain of plaintiff's instructions and points to plaintiff's given instruction No. 4, criticizing the giving of same because it does not require the negligent or careless management of the factory to be included. As we have already pointed out in our discussion of other instructions, neither negligence, carelessness, or contributory negligence have anything to do with a nuisance case. In *Feder v. Perry Coal Co.*, 279 Ill. App. 314, cited by plaintiff, the identical issue was discussed upon the refusal to permit defendant to show the usual, approved method. In *Cooper v. Randall*, 53 Ill. 24, it was held that evidence introduced for the purpose of showing that the machinery of the mill was excellent and the mill properly managed was not admissible. After consideration of the point offered and the other authorities called to our attention, we are of opinion that the court did not err in giving this instruction.

Defendant made a motion to withdraw a juror because the plaintiff cried, and contends that it was error for the court to deny this motion. From an examination of the briefs it appears that defendant's first contention under this point is that the damages were excessive by reason of plaintiff's conduct during the argument of her counsel to the jury. The record discloses that the plaintiff had from 1934 to the time of trial undergone an extensive, painful and distressing series of treatments and operations, by numerous doctors and in various hospitals in the community. We are of opinion that the verdict for $5,000 is not an excessive one, and that there was no error in entering judgment on the verdict. The motion made to withdraw a juror because plaintiff cried before the jury (which motion was denied) would seem to have been directed to the sound discretion of the trial court. (*Kempinski v. Tuthill Bldg. Material Co.*, 255 Ill. App.

375.) As far as appears from the record there was no abuse of discretion nor was the denial of this motion such error, under the facts and circumstances submitted, as to justify a reversal.

The further error complained of was that plaintiff's counsel was permitted to repeatedly misstate the law in argument. Criticism is made to plaintiff's argument dealing with the question of whether it was necessary for plaintiff, under the circumstances as shown by the evidence, to move from the neighborhood. Our attention is called that defendant's counsel, in cross-examining plaintiff, after a series of questions concerning her knowledge of the nuisance across the way and its deleterious effect on her, asked her, "Why didn't you move out of the premises?" An objection made by plaintiff's counsel was sustained. While it is the general rule that defendant has a right to use its property as it sees fit, still, if in doing so, regardless of whether it is negligent or not or whether its factory is properly operated, it creates and maintains a nuisance and thereby deprives neighbors of the use and enjoyment of their homes and injures their health, it is liable. (*Feder v. Perry Coal Co.*, 279 Ill. App. 314; *Cooper v. Randall*, 53 Ill. 24.) Applying this principle to the facts and argument of counsel in question, we are of opinion that counsel correctly stated the law.

Another matter complained of by defendant is that improper evidence was admitted and that the court erred in refusing to strike incompetent and prejudicial evidence. The admission of evidence concerning the effect of the dust and lint upon other parties than the plaintiff, is objected to. In *Cooper v. Randall, supra,* it was held that evidence of this character was improperly rejected "for the reason that it tended to show the extent and character of the injury sustained . . ." and ". . . tended to show that the mill was capable of inflicting the injury complained of . . . ." This and other cases cited seem to sustain the position of the plaintiff, and we quite agree that the court did

not err on this question of admissibility of evidence. There are objections offered to the admissibility of other evidence, but after careful consideration we are of the opinion that the court properly passed upon the questions presented, and that there is no reason for a reversal on the questions of admissibility of evidence.

After careful consideration of the questions submitted to this court, we are of the opinion that there is no such error in the trial court's ruling upon the questions called to its attention as would justify a reversal, and that, considering the evidence offered, the jury's verdict is not contrary to the manifest weight of the evidence.

One further point is called to our attention, namely, the defendant's criticism of the actions of the trial court in his rulings on the evidence and the pleadings. From the record it would appear that the court exhibited fairness to both parties and kept the evidence within bounds at every juncture of the proceedings. There is one rather unusual suggestion offered by counsel for defendant, which is that ''To all the other errors the court added that of coercing a verdict, when a disagreement or a verdict for defendant might otherwise have resulted, by holding the jury from 4:15 o'clock in the afternoon until midnight.'' It is called to our attention that defendant agreed as to the time. The issues were complicated and the record voluminous with testimony of witnesses, and it would take a reasonable time for the jury to consider the matters before them. The court did not err in permitting the jury to consider the questions of fact until it was ready to submit its verdict.

After consideration of all the questions as we have discussed them, we are of the opinion that there was no error sufficient to justify a reversal, and accordingly judgment is affirmed.

*Judgment affirmed.*

BURKE, P. J., and KILEY, J., concur.