SIDNEY SCHATZ et al., Plaintiffs-Appellees, v. ABBOTT LABORATORIES, INC., Defendant-Appellant.

(No. 69-174;

Second District—March 5, 1971.

*Rehearing denied May 25, 1971.*

1092

CRAVEN, J., concurring in part and dissenting in part.

Runyard, Behanna, Conzelman, Schultz & O'Meara, of Waukegan, for appellant.

John F. Grady, of Waukegan, for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals from judgments entered in favor of the plaintiffs: (1) the sum of $3750.00 to Sidney Schatz and Lois Schatz, for the loss of use of their residence; (2) the sum of $15,000.00 to Sidney Schatz and Frances Klein, co-partners, for damages sustained in the operation of their theatre.

The damages were found to arise from pervasive nauseating odors produced by fermentation processes in the production of the antibiotic Erythromycin. Defendant is a major manufacturer of this product. Defendant established its pharmaceutical plant in North Chicago in 1920. Fermentation procedures were first started about 1947 in the making of pencillin. The record indicated that any odor incident to this process was confined to the premises. Production of penicillin stopped in 1961. In 1958 commercial production of erythromycin commenced. Between 1958 and 1967, the physical facilities for fermentation of the antibiotic were enlarged by 30 per cent and the actual production was doubled. It is agreed that the odor at issue arises from this process. The trial court found that the residence was acquired in 1936, and is 750 feet distant from the plant. The theatre was acquired in 1948, and is 670 feet distant from the plant.

The cause of action as to the theatre is stated in Counts II and IV of the complaint. Each of these counts prays both an injunction and damages. The trial court found that by 1968, defendant had installed pollution controls which were then adequate as long as production was not increased, and he denied the injunction.

Interference in the operation of the theatre business is alleged in the following: The odor invades the theatre so that the air-conditioner must be used for ventilating purposes, though no cooling is desired; that the plaintiffs have been unable to circulate fresh air in the theatre, but can only recirculate stale air; that employees complain of the odor and that one became ill and left plaintiffs' employ; that upon approximately a dozen occasions patrons have become ill from the odor and have vomited in the theatre; that on numerous occasions patrons have complained of the odor and demanded refunds and that as a proximate result there has been a substantial decline in patronage resulting in a loss of profits. It is further alleged that as a result of the smell plaintiff's theatre has been depreciated in its market value.

The court's judgment order included a finding of "* * * damages to their business, taking into consideration expenditures made, refunds and loss of business * * *" in the sum of $15,000.00. This judgment must be reversed for failure of proof of damages.

While there is evidence which would sustain a finding that noxious odors entered the building and caused unpleasant conditions, the finding as to expenditures made is not supported by any evidence in the record. The testimony as to the extraordinary operation of the ventilating and air-conditioning system shows nothing concerning the cost resulting and there is no evidence of expenditures made.

While the prayer for damages is made in terms of loss of profits, we can find no evidence in the record demonstrating what profits were lost. Plaintiffs' evidence is limited to showing the number of patrons in the years 1959 through 1967, and ten months in 1968, together with certain gross receipts for each year. No costs of doing business are shown.

Damages for a tortious injury of a regular and established business are measured by the loss of profits. (*Meyer v. Buckman*, 7 Ill.App.2d 385; 129 N.E.2d 603.) The diminution of gross income is not a measure of loss of profits or injury to business. (25 C.J.S. 978, *Damages*, par. 90(b); 22 Am.Jur.2d 253, *Damages*, 178.) The actual receipts in evidence cannot be measured in terms of lost profits in the absence of evidence showing the costs of doing business.

Again, there is no evidence of the profits in years when no tort conduct was operative. Thus, we have no standard by which to determine what profit the going business might be expected to produce absent interference.

Plaintiffs argue that the cost of operating the theatre is the same whether the attendance is ten or capacity. We are not, however, advised as to what that cost is. The proposition argued indeed seems doubtful in the light of Schatz's testimony that he booked pictures by making

"bids" of a percentage of the gross receipts to the distributor. Again, it is necessary to know the contingencies which might affect profits. (*Chapman v. Kirby*, 49 Ill. 211.) We have no evidence as to possible changes in wages paid, tax rates or other costs of doing business. There is no evidence as to what pictures were shown during the period at issue and to what extent such pictures were patronized in comparable theatres. *Orbach v. Paramount Pictures Corporation* (Mass.), 123 N.E. 669.

The record suggests that the trial court questioned the sufficiency of the evidence introduced, and that counsel stated his theory that it was sufficient to show the patronage count and gross receipts. Upon such evidence it is impossible to obtain a measure of damages which can be sustained as loss of profits.

Peripheral to this inquiry, we note that while the testimony is that the odor was most offensive in 1967, the patronage in that year was 61 per cent greater than in the preceding year. In the view of the conclusion that the judgment must be reversed, it is not necessary to examine this evidence in the light of proximate cause.

■■ The trial court made no finding of depreciation of the market value of the theatre. Since the condition has been abated, it would not be a proper element of damages as a permanent nuisance. *Richards v. Village of Edinburg*, 97 Ill.App.2d 36; 239 N.E.2d 479.

■■ Any conclusion of damages by reason of refunds would be speculative. The record shows no testimony in terms of dollar damages, and there is no evidence which authorizes computation since it appears that prices of admission were changed from time to time and differed as between children, servicemen and adults.

The judgment for loss of use of the residence reaches us in an anomalous posture. Counts I and III contain a prayer for injunctive relief but no prayer for damages is shown in the abstract. It appears that the trial proceeded without any objection based upon this situation and the issue is not raised on appeal. The Civil Practice Act, Ill. Rev. Stat. 1967, ch. 110, par. 34, provides that except in cases of default, the prayer of the complaint shall not limit the relief granted. We therefore review, for otherwise we would be searching the record to reverse.

Injury in the use of the residence is alleged in the following: the odor requires that the house be closed at all times and generally must be ventilated by air-conditioning; that they are unable to enjoy their yard and use such for outdoor cooking or for drying laundry because the odor permeates the clothing; that the plaintiff, Lois Schatz, has been made nauseous by the odor, and that she has, upon occasions, found it necessary to leave her home in the nighttime and go to stay with relatives; that the parties have been unable to enjoy normal entertainment in their

home and that, upon occasions, guests have found it necessary to leave because of the odor, and that they have had to leave a prepared meal and take guests to a restaurant. It is also alleged that the odor has substantially reduced the market value of the home. The latter item is not now relevant to these proceedings for reasons which have been noted.

 The allegations of items of injury would be relevant, both to injunctive relief and to an award of damages. The judgment order contains the trial court's finding of damages for the loss of use of the residence, "* * * including expenditures reasonably necessary for additional insulation and air-conditioning in the sum of $3750.00". There is testimony that an air-conditioner was bought in 1964, another in 1965, and that central air-conditioning was installed in 1968. There is testimony as to the purchase of combination windows and doors. There is not, however, any evidence of costs or expenditures made for such items. As a result, the finding of the court as to expenditures made is not supported by any evidence.

██ That the use and enjoyment of the plaintiffs' home was seriously affected is not, in any way, contradicted in the record. There is evidence as to the unpleasant effects suffered by Mrs. Schatz, and that she was required to leave her home overnight to stay in the homes of others; there is evidence as to the necessity to keep the house closed and to the interference of the enjoyment of normal entertainment in their home. In fact, defendant's witnesses generally corroborated the fact that great annoyance pervailed. One Hermann, a sanitary engineer, testified that he would not want to smell the odor from defendant's plant all of the time. Hebior, the mayor of North Chicago, testified to receiving many complaints from the community, and that upon some occasions the odor entered into his home. An executive of the defendant testified that at times the operation of the plant was shut down because of the many complaints received. Such evidence sustains a cause of action.

In *Belmar Drive-In Theatre v. Hgw. Com.*, 34 Ill.2d 544; 216 N.E.2d 788, it is said that at common law a "nuisance" is that which unlawfully annoys or injures another, and that to constitute a nuisance the act complained about must cause some real injury, inconvenience or injury to the person or property of another. It is further said that due care or negligence in the operation of the business ordinarily is not a factor in an action for nuisance. In fact, an annoyance may result where there is the highest degree of care in the conduct of the business. *Menolascino v. Superior Felt & Bedding Co.*, 313 Ill.App. 557; 40 N.E.2d 813.

Offensive odors may constitute a nuisance for which there is a cause of action. (*Oehler v. Levy*, 234 Ill. 595; 85 N.E. 271, (a stable).) Whatever is offensive physically to the senses and by such offensiveness makes life uncomfortable is a nuisance. (*Wahle v. Reinbach*, 76 Ill. 322 at p.

327.) In *Wente v. Commonwealth Fuel Co.*, 232 Ill. 526 at p. 533; 83 N.E. 1049, it was said that a business offensive to such a degree as to materially interfere with the ordinary physical comfort, habits and feelings of ordinary people was a nuisance.

In *Richards v. Village of Edinburg*, 97 Ill.App.2d 36; 239 N.E.2d 479, the court affirmed a judgment for damages for permanent nuisance arising from the operation of a municipal sewerage plant built adjacent to a residence. The court determined that the issues of fact were whether the odor was caused by the operation of the plant, and whether the odor was such as to be objectionable to a normal person.

Defendant urges that the issues are controlled by *Gardner v. International Shoe Co.*, 386 Ill. 418; 54 N.E.2d 482 and *Patterson v. Peabody Coal Co.*, 3 Ill.App.2d 311; 122 N.E.2d 48. In *Gardner*, the court reversed a judgment for damages for interference with the enjoyment of the home alleged to result from the odors produced in a tannery settling pond. The pond had been built at the demand of the Sanitary Water Board. There, the court noted that plaintiff had built the home after the tannery had been established and placed in operation. Plaintiff argued that the settling pond subsequently built produced a different obnoxious odor than that from the original tannery. The court found, however, that the record showed that the odor was not substantially different and that, in fact, the evidence was contradictory upon the degree of offensiveness as no other persons complained.

■■ In this case it is true that defendants had a plant in operation at the time plaintiff acquired the residence, which the court finds to be substantial and in a fine residential district. As of that time, however, the plant did not produce offensive odors. In *Oehler v. Levy*, 234 Ill. 595; 85 N.E. 271, a livery stable was in business at the time plaintiff purchased an apartment house next door. A similar argument was made by that defendant, but the court noted that the use of the stable had been changed and that such altered use created offensive odors and conditions beginning after plaintiff's purchase. In this case the record is clear that the odor results from the production commenced in 1958, and thereafter greatly increased.

■■ Insofar as defendant argues that *Peabody Coal Co.* holds that there is no liability absent negligence or intentional tort, it is overruled by the opinions in *Belmar Drive-In Theatre* and *Richards v. Village of Edinburg*. Relying further on *Peabody Coal Co.* and *Haack v. Lindsay Chemical Co.*, 393 Ill. 367; 66 N.E.2d 391, defendant argues that its business is useful and beneficial and that it is in a suitable locality, *i.e.*, that North Chicago is a large community which has many industrial plants, and that one who chooses to live in such a community must endure inconveniences associated with living amidst industry. It is urged

that *Haack* requires reversal of this judgment. In that case several defendants had each recovered a judgment for one dollar for damages to property sustained over a period of five years. They then sought to enjoin operation of the plant in such a fashion as to produce fumes and odors. The actual determination in the opinion is that a court will not grant an injunction as a matter of course where a judgment at law has been obtained, and that the extra-ordinary powers of equity will not be used where substantial justice can be done by courts of law. Thus, a court will "balance equities" in matters of injunction, but the usefulness of the offending business is not determinative of the right to damages for injuries shown. There may be a right to damages where the location of the offending business is imperative. *Richards v. Village of Edinburg*, 97 Ill.App.2d 36; 239 N.E.2d 479.

This record further shows that the argument of suitability is inapplicable in several aspects. While the record recites the presence of many industrial plants in the community, there is no evidence that any other plant discharges sickening fumes into the air in large quantities. The only other odor identified in the testimony is that of a candy factory.

The trial court expressly found that North Chicago was an industrial community where the residents were less entitled to complain about smoke and odors than those who resided in an essentially residential community. He further found, however, that the odor from the fermentation at defendant's plant, "\* \* \* greatly exceeded the industrial odors considered permissible \* \* \*" in such community. Such conclusion is supported by evidence.

■■ Finally, the record shows that North Chicago adopted a zoning ordinance in 1957 which provided in substance that no obnoxious or offensive odors shall be emitted by any use permitted in this district in such quantities as to be readily detectable by an average observer at any point on the boundary line of the nearest residential or business district. Upon this record, the fermenting process at issue does not qualify as a non-conforming use. We refer to this ordinance only as some evidence of the "suitability" of this location for the fermenting processes of defendant's operation as determined by the representatives of the community.

■■ Defendant contends that since the plaintiffs claim that the nuisance existed as early as 1958, any action for damage to property accrued at that time and a suit for the entire damage present and future should have been brought within five years of that date, citing *C. & E.I.R.R. Co. v. McAuley*, 121 Ill. 160; 11 N.E. 67; *Chicago North Shore St. Ry. Co. v. Payne*, 192 Ill. 239; 61 N.E. 467 and *Illinois Nat. Bank v. City of Rockford*, 406 Ill. 11; 92 N.E.2d 166. The cited cases refer to creation of a permanent situation which causes damages to property. We think that

the damages here alleged are of a recurring nature and, furthermore, result from a condition which is subject to abatement. Therefore, if damages are recoverable they are recoverable from time to time commencing five years before suit and including only damages to the time of suit. *Menolascino v. Superior Felt & Bedding Co.*, 313 Ill.App. 557; 40 N.E.2d 813; *Jones v. Sanitary Dist. of Chicago*, 252 Ill. 591; 97 N.E. 210; 34 Am.Jr. "Limitation of Actions", par. 131, Vol. 34, p. 106.

Since the judgment for loss of the use of the residence includes elements of damage not supported by any evidence, such judgment must be reversed and remanded for further proceedings not inconsistent with the views expressed herein.

The judgment for the plaintiffs, Sidney Schatz and Frances Klein, copartners, is reversed; the judgment for plaintiffs, Sidney Schatz and Lois Schatz is reversed and the cause remanded with directions.

Reversed in part; and remanded in part.

SMITH, P. J., concurs.

Mr. JUSTICE CRAVEN concurring in part and dissenting in part:

As I view it, the judgment for the plaintiffs Sidney Schatz and Lois Schatz for damages should be affirmed and the judgment for Sidney Schatz and Frances R. Klein, as copartners, should be reversed and the cause remanded for a determination of damages only.

I agree with the majority opinion that the defendant's liability in this case is clearly established. Its liability is due to a nuisance created and maintained by it, and it is immaterial that the defendant may have used the highest degree of care. Negligence is not a necessary component of a nuisance cause of action. *Richards v. Village of Edinburg*, 97 Ill.App.2d 36, 239 N.E.2d 479 (5th Dist. 1968); ILP, Nuisances, sec. 13.

As to the damage phase of this case, as distinct from the original request for injunctive relief, the relevant hardship on the defendant and the plaintiffs is not a matter for consideration; neither is it relevant that the defendant is engaged in a useful, important or socially acceptable enterprise. The Supreme Court of Wisconsin, in stating this rule, said:

"We know of no acceptable rule of jurisprudence that permits those who are engaged in important and desirable enterprises to injure with impunity those who are engaged in enterprises of lesser economic significance * * *" *Jost v. Dairyland Power Cooperative*, 172 N.W. 2d 647, 653 (1970).

In this case the evidence is clear that the plaintiffs have been unable, on many occasions within the limitations period applicable, to use and enjoy their residence. The evidence is clear that the pervasive odor emanating from the defendant's plant was such as to amount to a total

denial of use on some occasions and resulted in discomfort and inconvenience to the plaintiffs more of the time. While it is true that there is no dollar evidence as to their expenditures for insulation and air conditioning in the frustrating effort to make the home habitable, such is not an essential bit of evidence in order to sustain the judgment in the amount here involved. While the trial court did make findings with reference to expenditures for insulation and air conditioning, such can be treated as surplusage since, as I view it, the record is otherwise sufficient to sustain the award.

Where the property alleged to be damaged by a nuisance is occupied by the plaintiff as a home, his damages may be measured by his discomfort and deprivation. ILP, Nuisances, sec. 65; 66 CJS, Nuisances, sec. 19, at 771.

Turning now to the judgment for damages to the plaintiffs as copartners in their operation of the theater, I agree with the majority opinion statement as to the measure of damages. The trial court found that the business operation was required to make refunds to patrons on frequent occasions, sometimes of a limited nature and sometimes involving many patrons. It further found that their normal business expected was substantially reduced whenever the odor emanating from the defendant's plant was present. Here again, specific dollars amounts of damages are not found, and it may well be that improper elements of damage went into the court's consideration in arriving at the amount of the judgment.

In *Tri-County Grain Terminal Co. v. Swift & Co.*, 118 Ill.App.2d 313, 322 (254 N.E.2d 311, 315 (4th Dist. 1970)), we stated:

"Whenever the fact of injury or damages has been proved with reasonable certainty, some uncertainty as to the amount of damages sustained is not sufficient ground to set aside a jury verdict awarding damages. A party cannot be permitted to escape liability for his wrongful acts simply because the plaintiff's damages are difficult to prove. The 'best evidence' which the nature of the subject will permit in such cases is sufficient to sustain a jury award. *Johnston v. City of Galva*, 316 Ill. 598, 147 N.E. 453, 38 ALR 1384 (1925) * * *"

That rule seems to me to have some application here. This rule is equally applicable in a bench trial. While the measure of damage to a business by reason of a defendant's tortious conduct must be measured by the loss of profits, the majority seem to be imposing a difficult, if not impossible, burden of proof for this injury. Some damage, at least, is established. It would seem to me to be appropriate that the cause be remanded for further hearing as to the damage issue with reference to the business property. Outright reversal amounts to a denial of any meaningful remedy.